## Case No. 8,268.

### LE ROY v. CLAYTON et al.

[2 Sawy. 493.] [1]

Circuit Court. D. California. Jan. 22, 1874.

PATENT DELIVERY—PATENT RECALLED WITH CONSENT OF PATENTEE—PATENT CANCELED WITHOUT CONSENT OF PATENTEE.

1. A personal delivery of a patent to the patentee is not necessary to the vesting of the title.

2. A patent in due form signed by the president, sealed with the seal, and duly recorded in the records of the general land office, issued upon a Mexican grant of land in California confirmed in pursuance of the act of congress of 1851 [9 Stat. 631], and subsequent acts, was sent to the United States surveyor-general for California to be delivered to the confirmee. The party entitled refused to accept the patent, on the ground that it was erroneously located, and of defects in the proceedings prior to the patent, and petitioned the commissioner of the land office on these grounds to recall the patent and order a re-survey, which was granted: *Held*, that the commissioner of the land office had power, under the circumstances, and with the consent of the party in interest, to recall the patent and order a re-survey.

[Cited in Pengra v. Munz, 29 Fed. 835.]

3. Having power to recall the patent, in a proper case, with the consent of the patentee, he had power to determine whether the application and evidence presented a proper case for recall, and his action is not void by reason of any error, if any error there be, in determining that question.

4. Jurisdiction defined to be the power to hear and determine.

5. A subsequent survey having been made, and another patent duly signed, sealed and recorded, being in all respects regular and in due form on its face, the commissioner of the general land office transmitted it to the United States surveyor-general for California for delivery to the proper party; but before its arrival in California recalled it by telegraph, and upon its return, without the knowledge or assent of the claimants, canceled the patent. The claimant as soon as it was

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

known acquiesced in, and claimed under the patent: *Held*, that the patent took effect from the moment when it was signed and duly sealed.

[Cited in Cruz v. Martinez, 53 Cal. 243.]

6. If not, the recording of the patent and its transmission to the surveyor-general for California to be delivered, constituted a delivery, and the title passed.

7. The title having vested under the patent, the secretary of the interior had no power to recall or cancel the patent without the consent of the patentee.

8. The patent, being valid on its face, cannot be collaterally impeached by matter dehors the patent, in an action at law brought in the national courts to recover the land purporting to be granted by it.

9. The only mode of impeaching the patent is by a direct proceeding in the proper form—as by bill or information—in a court of competent jurisdiction, against the patent, to annul or repeal it.

This is an action [by Theodore Le Roy against Charles Clayton and others] to recover land. The premises are claimed to be a part of the rancho "Guadaloupe," situate in the county of Santa Barbara, granted by the Mexican authorities to Diego Olivera and Teodora Arrellanes. The grant was duly presented for confirmation, and confirmed, under the act of congress of 1851 [9 Stat. 631], applicable to the subject. It was surveyed under the act of 1860 [12 Stat. 71], and on June 30, 1866, the commissioner of the general land office, in due form, issued a patent which was signed by the president, sealed, with the seal of the general land office, and duly recorded in the records of that office. The patent contained all the usual recitals in cases of grants of the kind confirmed under the act of 1851, and finally surveyed under the act of 1860, and was, in all respects, regular and in due form upon the face of the patent. On August 2, 1866, the commissioner of the general land office transmitted said patent to the United States surveyor-general for California to be delivered to the parties owning the grant. Immediately upon receiving notice of the issue of the patent, John B. Ward, then the owner of the grant, refused to accept it, on the ground that the survey was erroneous, and that there had been no legal notice given of the making and approval of the survey and plat, as required by the said act of congress of 1860. He soon after presented to the commissioner of the general land office a petition, with affidavits and other documentary evidence tending to show, that no legal notice of the survey, plats and approval thereof had been given, and that the survey was erroneous; and asked that the patent might be recalled, and a new survey had.

The commissioner of the general land office, acting upon said petition and evidence, and thinking said survey and patent erroneous, on October 22, 1866, recalled the said patent, and directed a re-survey to be made by the surveyor-general. There-

upon a re-survey was made, and such proceedings were had, that on March 1, 1870, a second patent was duly made out, sealed with the seal of the general land office, signed by the president, recorded in the records of the general land office, and afterward transmitted by the commissioner to the surveyor-general for California to be delivered to the parties interested. This patent was in the usual form issued in such cases, containing all the recitals of prior proceedings required by the acts of congress, and was in all respects regular, and in due form upon its face. Afterward, and before said patent reached California, the commissioner of the general land office telegraphed to the said surveyor-general to return said patent to the general land office, and it was so returned, but without the knowledge or assent of the owners of said grant. Afterward the commissioner of the general land office, also without the assent of said owners, by direction of the secretary of the interior, wrote across the face of said patent of March 1, 1870, the following words: "Canceled, see decision dated June 12, 1872, of general land office, affirmed by the honorable secretary of the interior, March 26, 1873. Willis Drummond, commissioner. General land office, April 10, 1873." Afterward, in June, 1873, the said patent, dated June 30, 1866, was again transmitted by the commissioner of the general land office to the surveyor-general for California to be delivered to the owners of said grant, but the said parties have declined to take said patent, and they claim the said patent of date March 1, 1870, to be the only correct and valid patent.

The lands in question are not included in the patent of June 30, 1866, but are included in the patent of March 1, 1870, which last named patent embraces all the lands covered by the former, and other lands in addition. The plaintiff deraigns title from the original grantees of the said Guadaloupe rancho through these proceedings, claiming under said patent of March 1, 1870. The defendants were, at the commencement of this action, in possession, claiming a pre-emption right in the lands as being a part of the public domain of the United States.

W. H. Patterson and J. B. Felton, for plaintiff.

Gray & Havens, for defendants.

SAWYER, Circuit Judge, (after stating the facts.) The patent of March 1, 1870, took effect from the moment it was signed by the president and passed the great seal. Certainly, from the time it was recorded in the proper record and despatched to the surveyor-general for California, to be delivered to the claimants. A delivery in the case of a government patent is not necessary. The patentee takes by matter of record. Lott v. Prudhomme, 3 Rob. (La.) 293, which

is directly in point. Donner v. Palmer, 31 Cal. 513; Marbury v. Madison, 1 Cranch [5 U. S.] 137; Green v. Liter, 8 Cranch [12 U. S.] 247; Chipley v. Farris, 45 Cal. 539; Cunningham v. Browning, 1 Bland. 299, 304, 308, 321; Philips' Lessee v. Irwin, 1 Overt. 235; Lapeyre v. U. S., 17 Wall. [84 U. S.] 191.

But if something in the nature of a delivery were necessary, it has often been held that the recording of a deed by the grantor, even without the knowledge of the grantee, is a constructive delivery. So the giving of it to a third party for the grantee to be delivered to him, is a delivery. In Marbury v. Madison [supra], the court say, upon the hypothesis that a delivery is necessary, that "It is not necessary that the delivery should be made personally to the grantee of the office. It never is so made. * * * If then, the act of livery be necessary, to give validity to the commission, it has been delivered, when executed and given to the secretary for the purpose of being sealed, recorded and transmitted to the party. But in cases of all letters patent certain solemnities are required by law, which solemnities are the evidences of the validity of the instrument. A formal delivery is not one of them." [Marbury v. Madison] 1 Cranch [5 U. S.] 159, 160. See, also, 5 Barn. & C. 671; Tibbals v. Jacobs, 31 Conn. 428; Stevens v. Hatch, 6 Minn. 64 [Gil. 19]; Mitchell v. Ryan, 3 Ohio St. 387; 4 Ohio, 74; 19 Ohio, 18; 8 Ohio, 87.

The patent in this case was recorded in the proper records, and transmitted to the surveyor-general for delivery to the owners of the rancho, and the acts mentioned herein were as effectual to pass the title, as if the patent had been delivered by the commissioner of the general land office, to the patentee in person, and had been formally accepted by him. An acceptance is presumed in such cases, unless the contrary appears. See authorities last cited.

If the title vested under the patent, the commissioner of the general land office could not, of his own motion, divest it by canceling the patent, or the record of the patent without the knowledge or consent of those interested. Lick v. Diaz, 30 Cal. 65, 37 Cal. 437.

But it is insisted on the part of the defendants, that the issue of the patent of March 30, 1866, completed the proceeding in the case of the Guadaloupe rancho; that from that moment the commissioner of the general land office was functus officio; that all his subsequent acts were necessarily void for want of power; and that the first patent is the only valid patent. This, to my mind, presents the most difficult question in the case.

If, for instance, the acts of congress upon the subject had been wholly repealed pending the proceedings to confirm the Guadaloupe grant, and the land department had, nevertheless, gone on and completed the proceedings, and issued the patent in all respects, in the form in which it now appears, the patent would, doubtless, have been void for want of any authority to complete the proceeding, and issue the patent. All jurisdiction would have been withdrawn. The patent, although in the semblance of a record in such cases, would really be no public record, for the want of jurisdiction in the officers to make it. And this want of power would be an available defense to an action to recover land depending on the patent. So, if the issue of the first patent, as found in this case, did fully complete the proceeding for the confirmation of that grant, and absolutely vest the title in the confirmees, willing or unwilling; if thereby the power of the commissioner of the general land office under the statute, had been fully exhausted with respect to that specific grant, without authority under any circumstances, to re-open the case, all subsequent proceedings, I think, must be void for want of power; and this want of power is a good defense to the action. Such, I also think, would have been the result had the parties holding the grant acquiesced in the action of the land office, and accepted the patent; but they did not acquiesce or accept it. On the contrary, the patent was at once repudiated when brought to their knowledge, and an application promptly made to have it recalled on the ground that proper notice of the approval of the survey and plat had not been given as required by the statute, and that the survey was erroneous.

In the case of an old grant in Missouri, in Maguire v. Tyler, the supreme court held, that "where a patent has issued to one who protests against the survey on which it is made, and the record shows that he never accepted it, the secretary of the interior may recall it." 8 Wall. [75 U. S.] 651, 663; so, also, 1 Black. [66 U. S.] 199.

In that case it appeared that the grant had been improperly located. But the power to recall the patent after it has been issued with the consent of the patentee, when it does not cover the land to which the latter is entitled, necessarily involves the power to examine and determine whether the grant has been property located. If the commissioner of the general land office has the power to act at all in such a case, that ends the question, for that constitutes jurisdiction.

Jurisdiction has often been defined by the supreme court to be "the power to hear and determine." Grignon's Lessees v. Astor, 2 How. [63 U. S.] 338.

And again: "The jurisdiction of the court cannot depend upon its decision upon the merits of the cause brought before it, but upon the right to hear and decide at all." Ex parte Watkins, 7 Pet. [32 U. S.] 572. See, also, [U. S. v. Arredondo] 6 Pet. [31 U. S.] 709; [State of Rhode Island v. State of Massachusetts] 12 Pet. [37 U. S.] 718; [Ex parte Watkins] 3 Pet. [28 U. S.] 205; [Kendall v.

U. S.] 12 Pet. [37 U. S.] 633; In re Bogart [Case No. 1,596].

The same definition applies to other officers entrusted with powers, as well as to courts. In the case of Maguire v. Tyler, the proceedings were fully completed, and the patent issued. There was no mere clerical error, or excess of jurisdiction. Just such a patent was issued, and in such a case, and to such a party as was contemplated. It was simply erroneous. An error occurred in the course of the proceeding in the due exercise of jurisdiction as distinguished from a case of want of jurisdiction. The officers of the government misjudged, and determined that he was entitled to the wrong land. Yet, upon the refusal of the patentees to accept the patent, and upon their application it was recalled. The supreme court twice determined that it was properly done. I can perceive no distinction between that case and this. The present case is, in all essential respects, similar. The commissioner of the general land office, acting upon the certificate of the surveyor-general, issued a patent. Immediately the parties in interest refused to accept it, and made a showing which, at the time, satisfied the commissioner of the general land office that the statutory notice had not been given, and that the land was not properly located. If there was, in fact, any error, it was an error in the exercise of jurisdiction—in the determination of the question of fact—like that in the cases cited. He recalled the patent, and other proceedings were had, which ran through a period of nearly four years, embracing a new survey, approval, etc., and resulted in a new patent in accordance with the last survey. Now if the commissioner of the general land office was functus officio on the issue of the first patent, he must have been so on the issue of the patent in question in Maguire v. Tyler, for at the time of the recall, both cases were essentially alike. It is true that, under the fifth section of the act of 1868, the survey, under the circumstances prescribed, becomes final, and has all the force and effect of a patent. But it has no greater force than the patent. The patent is the formal, final and authentic record. If the patent itself can be recalled and corrected upon the application of the patentee, when erroneous, the survey, which is of no greater force, can be corrected by the same authority. Besides, one of the very questions for the commissioner of the land office to determine on the application to recall the patent and correct the survey was, whether all the acts necessary to make the survey final, had been in fact performed. The certificate of the surveyor-general, upon which he acted in issuing the patent was, doubtless, prima facie evidence, which, in the absence of anything to the contrary, justified him in its issue. But it was not necessarily conclusive. The statute does not so provide. On the application to recall the patent, other evidence was offered tending strongly to show that the certificate of the surveyor-general, as to a legal publication, was erroneous in point of fact, and the survey erroneous. The case of Maguire v. Tyler, settles the question, that the power exists to recall a patent, which the patentee declines to accept, on the ground that it was erroneously issued, upon the application and with the consent of the patentee, when there is found to be error; and as a predicate for such action, necessarily, the power remains to determine the question whether such error exists as will justify a recall. And it seems to me to cover this case.

The jurisdiction then had not been wholly exhausted by the issue of the patent; and, as before said, if there was still left power to recall a patent merely erroneously issued, the authority remained to inquire and determine whether it was erroneously issued. There might be error in that determination, but it would be an error in the exercise of jurisdiction in determining whether there had been a legal notice, or a proper survey, and not an act performed without jurisdiction. And such error cannot be reviewed in this court in this kind of action. The patent having been recalled in the exercise of a lawful power, the case stood as if it never had issued, and the subsequent proceedings are all regular and in due form. The patent of 1870 is regular upon its face, and, according to the recitals, issued in a case fully authorized by law. If it is to be defeated, it is by matter dehors the patent, and upon the grounds either of error, mistake, or fraud, in some part of the proceedings resulting in the patent and not from want of power to act upon a proper showing in any of the necessary steps taken. The patent itself is a solemn record of the government, and not subject to be impeached collaterally from without, in an action at law in the national courts. It is so regarded upon principles of public policy resting upon the same grounds that forbid a collateral impeachment of a judgment of a court of competent jurisdiction, valid upon its face, whatever errors or fraudulent practices may have intervened in the proceedings upon which it was obtained. In Doll v. Meader, 16 Cal. 325, Mr. Ch. Justice Field well says: "If the authority to issue a patent depend upon the existence of particular facts in reference to the condition or location of the property, or the performance of certain antecedent acts, and officers have been appointed for the ascertainment of these matters in advance, who have passed upon them and given their judgment—then the patent, though the judgment of the officers be in fact erroneous, cannot be attacked collaterally by parties showing title subsequently from the same source, much less by those who show no color of title in themselves. In such cases, the parties without title cannot be heard, and the parties with subsequent title must seek their remedy by scire facias, or bill, or information to revoke the

first patent or limit its operation." And Mr. Justice Grier, in U. S. v. Stone, 2 Wall. [69 U. S.] 535, says: "A patent is the highest evidence of title, and is conclusive as against the government, and all claiming under junior patents or titles, until it is set aside or annulled by some judicial tribunal. In England this was originally done by scire facias, but a bill in chancery is found a more convenient remedy."

Upon these principles, no error, if any there is, of the commissioner of the general land office in determining the question whether there was a proper ground for recalling the first patent and in recalling, is subject to review in this case. If there is any ground of mistake, fraud or otherwise, which would justify the repeal, or annulling of the patent of 1870, that object must be accomplished in some direct proceeding in the proper court, taken for that purpose against the patent. An equitable defense to an action at law is not available in this court, and in this action the patent is conclusive. The difference between the first and last patent is this: The last was promptly acquiesced in and accepted, while the first was rejected by the interested parties, and the patent recalled on their application on a showing to the satisfaction of the commissioner of error. The contest between the parties in the same proceeding had not yet ended. There was a re-opening of the proceeding for further hearing before acceptance and with the consent of both parties. I desire it to be understood that I have not considered the effect of a refusal of the claimant to accept a patent issued in this class of cases in any other aspect, than as bearing upon the question of power to recall a patent and re-examine the survey with his assent and upon his application.

The defendants, as authority for cancelling the last patent, cite Bell v. Hearne, 19 How. [60 U. S.] 262; and Doswell v. De La Lanza, 20 How. [61 U. S.] 29.

But these cases are not like the present. They depend upon different principles. In the last case John Bell had purchased the land and got his certificate of purchase. By a clerical error in the land office the name of James Bell was returned, and the patent made out in his name, but delivered to John Bell, the true party. He returned it, and had a new patent issued in the proper name. John Bell was the purchaser. He was the one to whom it was intended to patent the land. The patent was delivered to him. There was no purchase by James Bell, and no proceedings by him, or in his name, upon which to base a patent other than that which by a clerical error accidentally crept into the return to the general land office. There was no error in judgment in determining a matter in the progress of the proceeding, for there was no proceeding at all by the nominal patentee. It was like commencing and prosecuting an action against John Bell till coming to the verdict, which is accidentally returned, and

judgment thereon rendered in the name of James Bell, who has never been a party to, or appeared in, the action. Besides, as in the case of Maguire v. Tyler, the patent was returned by and corrected with the assent and at the request of the real party in interest. The other case is similar, only it does not appear, except by implication, at whose request the patent issued in the name of the wrong party was canceled. In both of these cases there were no proceedings by purchase, or otherwise, anterior to the issuing of the patents upon which to base them—nothing upon which the commissioner was authorized to act in these cases—nothing to call the jurisdiction of the land office into action at all in respect to the nominal patentees. The patents were never intended for them.

There must be judgment for plaintiff with costs, and it is so ordered.

[For a subsequent decision in the same court by Circuit Justice Field in which he sustains patent of March 1, 1870, in an action brought by the same plaintiff against defendants who claim under the patent of October 7, 1873, to the overlapping part of the 1870 patent, see Case No. 8,271.]