[Filed July 28, 1888.]

JOHN GLIEM, RESPONDENT, *v.* THE BOARD OF COM-
MISSIONERS FOR THE SALE OF SCHOOL AND
UNIVERSITY LANDS, APPELLANT.

SCHOOL LANDS.—A person who has purchased from the board of commissioners
for the sale of school and university lands, under the act of the legislative
assembly of the State, providing for the selection, location, and sale of State
lands, etc., approved October 18, 1878, the *maximum* quantity of land he was
authorized to purchase under the act, is not thereby disqualified from taking
an assignment of a certificate of purchase issued by the board to an applicant
under the act, nor from receiving a deed from the board for such land in his
own name.

SCHOOL LANDS, SALE OF—HOW EFFECTED. — Where one K. held a certificate from
said board of commissioners for the purchase of one hundred and sixty acres of
land, under the act above referred to, and assigned the same to G., and G. after
the assignment to him made full payment to the board of the amount of the
purchase price unpaid, and delivered to the board such certificate and assign-
ment, *held*, that G. was entitled to a deed from the board to the land in his
own name, notwithstanding it appeared from the records of the board that a
deed had theretofore been executed to him for the full amount of land, which he
was entitled to apply to purchase under the act. *Held, further*, that a sale
under the act consisted of the application to the board to purchase such quan-
tity of the land as the applicant was entitled to apply to purchase, the payment
of the proportion of the purchase price thereof, the execution of the promissory
notes for the balance of the purchase price, as provided in the act, and the exe-
cution to the applicant of the certificate of purchase, and that the limitation
upon the quantity of the land a party was entitled to purchase under the act
only applied to such sale, and not to the purchase or assignment of a certificate
of sale from the party to whom the same had been issued.

APPEAL from the Circuit Court for the county of Marion.

*E. P. McCornack*, for Respondent.

*P. H. D'Arcy*, for Appellant.

THAYER, C. J. — This case involves the right of the respond-
ent to a deed from the appellant to a tract of State lands, con-
sisting of one hundred and sixty acres in section 15, T. 39 S.,
R. 9 E.   The respondent claimed to be entitled to the deed as
assignee of a certificate of sale from one George W. Karnes, to
whom it was issued by the appellant.

It appears that said Karnes, on the second day of December,
1881, applied to the board of commissioners for the sale of
school and university lands for the purchase of said land, under

the provisions of the act of the legislative assembly of the State, providing for the selection, location, and sale of State lands, etc., approved October 18, 1878. The application was made in accordance with section 5 of said act. The applicant, upon filing the said application, duly paid to the said board one third of the purchase price, and executed his promissory notes for the remaining two thirds, as provided by section 6 of said act, whereupon the said certificate was issued to him. That on the twenty-eighth day of January, 1885, said Karnes duly assigned and transferred the said certificate to the respondent, which assignment was executed as provided by section 11 of said act. That on the twenty-eighth day of May, 1888, the respondent, as assignee of the said George W. Karnes, made full payment of the amount due on the purchase price of the said lands, in accordance with the terms of the said certificate of sale, and thereupon delivered the certificate to the said board, together with the said assignment, and demanded from the board a deed to the said lands to him in his own name. The board thereupon refused to execute such a deed to the respondent, for the reason that it appeared from the records of the board that a deed had theretofore been executed to respondent for three hundred and twenty acres of land, and that the respondent had acquired all the land under the said act which he was entitled to purchase.

The only question presented to this court for its consideration herein is whether the appellant was justified in refusing to execute the deed to the respondent, upon the grounds referred to. Said section 5 of said act limits the quantity of land in such cases that any one person is entitled to purchase to three hundred and twenty acres, in case of a settler, and to one hundred and sixty acres in case of a non-settler; and the board seems to have been of the opinion that, as the respondent had already purchased under the act three hundred and twenty acres of land, he was not entitled to the deed. This was clearly an erroneous view. If the respondent had been an applicant to purchase the one hundred and sixty acres of land in question, the board would have had an undoubted right to reject his application, for the reason assigned in refusing to execute the

deed. But the respondent was not before the board in the character of a purchaser. He was not applying to *purchase* the land. He was applying as assignee of the certificate issued to Karnes for a deed in pursuance of section 11 of said act, which provides, that "all assignments of certificates of sale shall be executed and acknowledged in the same manner as a deed to real estate; and the assignee, upon full payment of the amount due on the purchase price, and delivery to the board of such certificate and assignment, shall receive a deed for the lands described in such certificate, in his own name, as if he were the original purchaser."

The one hundred and sixty acres had already been sold. It was sold to Karnes on the said second day of December, 1881, and the board would not have sold it again by executing the deed to the respondent any more than it would by executing the deed to Karnes himself. Selling land under the provision of the act to an applicant who applies under said section 5 to purchase it is the only sale provided for in said act, and the only one to which the limitation of quantity to a purchaser is made applicable. According to the view the board must have taken, there would be two sales of land under the act in every case; one when the application to purchase was accepted by the board, and the other when the deed was executed; while the act itself recognizes the former transaction as the sale, and the latter, as the receiving of the deed.

The certificate which the applicant is entitled to receive from the board, upon payment to the board of one third of the purchase price, and executing the notes for the two thirds, is required by said section 6 of said act to show that he *has* purchased the land therein described, has paid a certain sum thereon, and has executed the promissory note for a certain other sum, or other sums, and on payment of such notes, principal and interest, will be entitled to a deed therefor. The legislature evidently intended that when the certificate of purchase was issued to the applicant, the purchase was then made, and I do not see how the act can be construed otherwise. The policy of the law, no doubt, was to prevent an applicant from purchasing more of

the State lands than the quantity mentioned; but it could hardly have been expected that it would be the duty of the board to undertake to prevent their transfer after they were sold. Nor will a refusal upon the part of the board to execute deeds to assignees of certificates of purchase have the effect to prevent such transfer, or restrict parties from acquiring such an amount of the lands as they may desire to buy. It can have no other result than to embarrass and incommode the vendor and purchaser in the transfer of the title. If the vendor were not permitted to assign the certificate, and thereby enable the purchaser to make payment of the amount due on the purchase price, deliver the certificate and assignment to the board, and receive a deed, still he could make such payment himself, receive the deed from the board, and then convey the land to the purchaser. This, of course, would necessitate the making and recording of an extra deed, and the cost and expense thereof would in three cases out of four fall upon the vendor. I am unable to perceive how the public good could be subserved by requiring such a course to be pursued. It appears to me that it would be liable to operate more injuriously than beneficially; but however that may be, I am satisfied that the said act will not admit of such a construction as will render it necessary to pursue it.

The language of said section 11 of the act is as plain as words can make it. It unmistakably authorizes an assignment of the certificate of sale, the payment by the assignee of the balance due on the purchase price of the land, and the receipt by him of the deed therefor. Nor does the language of the section require the assignee or purchaser of the certificate to possess any particular qualifications in order to entitle him to become such assignee or purchaser; and the attempt upon the part of the board to prescribe the qualifications he shall possess, or conditions upon which the assignment or purchase shall be made, is a usurpation of legislative functions.

The judgment of the Circuit Court awarding the mandamus will be affirmed.