Argued 2 November; decided 4 December, 1899.

## WARNER STOCK COMPANY *v.* CALDERWOOD.

[59 Pac. 115.]

1. PUBLIC LANDS—SECOND SURVEY AS NOTICE—ESTOPPEL.—The United States, while it continues in the ownership of lands which by public survey appeared to abut on non-navigable waters, has the right to readjust the marginal survey, and reserve uplands that appear between the actual margin of the water and the meander line as originally run, and a purchaser therefrom after a second survey, which reserved upland between the first survey and the margin of a non-navigable lake, purchases with notice thereof, and is estopped to claim beyond the boundary shown by the survey under which he purchased.

2. SWAMP LAND—EFFECT OF PATENT.—The Swamp Land Act of 1850 as amended March 12, 1860, constitutes a grant *in præsenti* of all lands that were on that date swamp and overflowed, but the grant is not complete until the lands have been identified and patented.    The patent is considered the final official certificate of the character of the land, and, when issued, relates back to March 12, 1860, and carries title as from that day, so that a purchaser of swamp or overflowed land from the state has a better title thereto than a homesteader who settled thereon after 1860.

3. COLLATERAL ATTACK ON GOVERNMENT PATENT—SWAMP LAND.—A government patent cannot be collaterally attacked—so, in an action of ejectment by

a swamp land patentee against a homesteader of the same property, it was not error to refuse to allow defendant to show that the land in dispute was not swamp but was really beneath the waters of a non-navigable lake.

From Lake :  W. C. HALE, Judge.

Action by the Warner Valley Stock Company against J. E. Calderwood to recover land.   From a judgment in favor of plaintiff, defendant appeals.        AFFIRMED.

For appellant there was a brief over the name of *E. D. Sperry*.

For respondent there was a brief and an oral argument by *Mr. Charles A. Cogswell*.

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

This controversy arises from the following facts :   In 1875 the United States government caused a survey to be made, purporting to meander the margin of Lake Warner, situated in the southeastern part of the state.   By that survey, lots 1 and 2, section 28, township 37 south, range 25 east of the Willamette Meridian, and lots 1 and 2, section 33 of said township, which the defendant claims to own, were made to abut upon the margin of said lake. In 1887 a second governmental survey was made, purporting to again meander the said margin, which did not conform, in so far as it may concern this dispute, in any particular to the survey of 1875, but was run much nearer to the lake, and southwesterly from the original survey. The lands lying between the two lines were also surveyed and platted at the same time.   The plaintiff claims to be the owner of certain lands located upon this second survey, and other tracts between the two meander lines, and deraigns title from the United States through purchase from the State of Oregon.   The defendant claims by purchase under homestead and timber-culture entries.   The

tracts claimed by the plaintiff were patented to the state as swamp lands March 25, 1890. The defendant settled upon said lots 1 and 2, section 28, November 12, 1886, and on January 24, 1889, entered the same as a homestead, and received a duplicate receipt therefor, numbered 1,178. Subsequently he made final proof, and, on September 27, 1895, received his final receipt (No. 608) from the government. He entered lots 1 and 2, section 33, March 28, 1889, under the timber-culture act, and received a duplicate receipt from the government therefor, being No. 1,038. At the trial, plaintiff offered in evidence the patent from the government to the State of Oregon, and a stipulation of the parties to the effect that plaintiff had succeeded to all the interest which the state acquired under said patent. There was also offered and received in evidence a plat showing the relative location of the respective surveys of 1875 and 1887, and the legal and fractional subdivisions of land abutting upon such surveys. An attempt by defendant to show, by evidence *aliunde*, that the margin of the lake still extended to the survey of 1875, and that the land claimed by plaintiff was covered by the waters of the lake, and was therefore not swamp land, was denied by the court below, and its action in this regard is assigned as error. The defendant contends that, his purchase from the government having been made with reference to the survey of 1875, which purported to meander the margin of Lake Warner, he took to the center of the lake, it being a non-navigable body of water, notwithstanding the margin may not have been exactly meandered by the survey, and that the government was estopped by the survey to dispose of the upland between the survey and the actual margin of the lake. Under this contention, it is claimed that defendant's lands extend to the actual margin of Lake Warner, and therefore that he

is entitled to the lands claimed by plaintiff, lying between the lots of defendant, as designated upon the plats of 1875 and the survey of 1887.

1. As it regards the timber-culture entry, we have only to say that the contention is wholly without merit, as the second survey was made prior to the date of entry, and the entryman must be deemed to have taken with knowledge that the government had reserved the upland lying between the first survey and the margin of the lake, and he is therefore estopped to claim beyond the boundary of the survey under which he purchased. In such a case it cannot be claimed that he purchased with a view of acquiring riparian rights, as the government plats did not represent the lots as extending to the water's edge, and the purchase must be deemed to have been made with reference to the public surveys and plats as they existed at that time. Where the general government continues in ownership of lands which by the public surveys appear to abut upon non-navigable waters, it must be conceded that it has the right and authority to resurvey and readjust the marginal survey and reserve to itself any uplands that may subsequently appear between the survey and the actual margin of the water supposed to have been meandered in the first instance : *Cragin* v. *Powell*, 128 U. S. 691 (9 Sup. Ct. 203).

2. In so far as it relates to the homestead entry, a different question arises. The defendant claims that inasmuch as the swamp land was not patented to the state until March 25, 1890, he acquired a prior and superior right, by virtue of his settlement, in contemplation of his homestead entry on November 12, 1886, which antedated the second survey. Swamp lands were granted to the state by virtue of the act of congress of September 28, 1850, as supplemented by the act of March 12, 1860, extending its provisions to all the states of the Union.

These acts have been held to constitute a grant *in præsenti*, and that, when the swampy character of the land has been identified and established, the grant carries the title to the state as of the date of the act. Mr. Justice FIELD, in *Wright* v. *Roseberry*, 121 U. S. 488 (7 Sup. Ct. 985), says: "When identified, the title would become perfect as of the date of the act. The patent would be evidence of such identification, and declaratory of the title conveyed. It would establish definitely the extent and boundaries of the swamp and overflowed lands in any township, and thus render it unnecessary to resort to oral evidence on that subject. It would settle what otherwise might always be a mooted point,—whether the greater part of any legal subdivision was so wet and unfit for cultivation as to carry the whole subdivision into the list. The determination of the secretary upon these matters, as shown by the patent, would be conclusive as against any collateral attacks, he being the officer to whose supervision and control the matter is especially confided. The patent would thus be an invaluable muniment of title, and a source of quiet and peace to its possessor." In a later case (*Michigan Land & L. Co.* v. *Rust*, 168 U. S. 589, 18 Sup. Ct. 208), Mr. Justice BREWER said: "The act of 1850 made a grant *in præsenti*. In other words, the title then passed to all lands which at that date were swamp lands, and the only matters thereafter to be considered were those of identification." In another case, still later (*Brown* v. *Hitchcock*, 173 U. S. 473, 19 Sup. Ct. 485), the same learned justice said: "Under the swamp land act, the legal title passes only on delivery of the patent;" and it was further held that, until the legal title to such lands passed from the government, inquiry as to all equitable rights came within the cognizance of the land department. These two later decisions must not be understood, however, as in anywise conflicting with the idea that the

grant was one *in præsenti*.   The patent is merely the evidence of title, is the final certificate of the character of the land, and, when issued, the title relates back to the date of the grant or the act of congress under which title is given.   So that, under these authorities, it must be · held that the grant to the swamp lands covered by the patent under which plaintiff claims took effect or related back to March 12, 1860, when the provisions of the swamp land act were extended to the State of Oregon.   The action here instituted is for the recovery of real property, and the defendant has not set up any equitable defense by way of cross bill, but merely pleads, in effect, as he may do under the statute, that he is the owner in fee of the land claimed by the plaintiff.   The question, therefore, arises squarely upon the record title, and the one prior in time must prevail.   The plaintiff's title from the government, as we have seen, dates from March 12, 1860, and this is long before the defendant settled upon the homestead; so that plaintiff must be held to have a better title.

3.   The attempt to show by parol that the land claimed by plaintiff was under the waters of the lake, and not swamp land, was an attempt to impeach the patent under which plaintiff claims from the government, and it was not competent for defendant thus to impeach the plaintiff's muniment of title.   The patent is conclusive against collateral attack :   *Wright* v. *Roseberry*, 121 U. S. 488 (7 Sup. Ct. 985).   These considerations affirm the judgment below, and it is so ordered.       AFFIRMED.