Argued 22 March, decided 24 July, 1906.

**WARNER VALLEY STOCK CO. *v.* MORROW.**

86 Pac. 369.

PUBLIC LANDS—PATENT—NEED OF DELIVERY AND ACCEPTANCE.

1. A patent from the United States to a state for public land is not open to the objection of incompetency without evidence that it was received by the state or some authorized agent, as the mere execution of a patent by the United States officers is sufficient to pass the title without delivery, the patent being a public record.

CONCLUSIVENESS OF STATE DEED ON COLLATERAL ATTACK.

2. The State Land Board being the land department of the State of Oregon, its deeds are conclusive as to the right to convey the land therein described, and are not open to collateral attack in a law action.

RIGHT OF STATE TO DEED MORE THAN 320 ACRES TO ONE PERSON.

3. A deed from the State Land Board of Oregon for more than 320 acres of state land to one person is not void on its face for want of authority in the grantor to convey more than that quantity of such land, though the law limits to 320 acres the amount of any one purchase, for certificates of sale are transferrable, and one deed may be made for the total of many purchases that have been lawfully acquired by one person.

PUBLIC LAND—TITLE BY RELATION THROUGH PATENT.

4. The title of a patentee of swamp land from the State of Oregon relates to the date of the grant from the United States to the state, and carries the title as though it had been then executed.

CONCLUSIVENESS OF PATENT ON COLLATERAL ATTACK—PRESUMPTION.*

5. Where the officers of the government, federal or state, have issued a patent in due form of law which on its face is sufficient to convey title to the land therein described, it will be conclusively presumed by courts of law that all prerequisites to the issuance of a valid patent were complied with, and therefore the title is not open to collateral attack in a law action.

TIMBER CULTURE CLAIMS—EFFECT OF DEATH OF CLAIMANT.

6. The death of a timber culture entryman before making final proof entirely ends his rights to the land and any deed that may thereafter issue to his heirs for such land runs to them directly from the government and not through their ancestor. An administrator of the estate of such a claimant has no rights whatever as to the land so entered.

From Lake: HENRY L. BENSON, Judge.

Statement by MR. JUSTICE HAILEY.

This is an action by the Warner Valley Stock Co., a corporation, against J. L. Morrow, to recover the possession of real property in Lake County, Oregon, described as the N. W. ¼ of section 35 in township 39 S., range 24 E. of the Willamette Meridian. The appeal is from a judgment in favor of the plaintiff. The complaint is in the usual form. The answer "denies each and every allegation of the complaint except as hereinafter admitted and averred," and then sets up as affirmative defenses (1) the statute of limitations, and (2) adverse possession, neither of which was urged at the hearing or in the brief; (3) legal title of the lands in the United States; and (4) defendant's claim thereto under a timber culture filing by one John W. Morrow, substantially as follows: That on March 12, 1888, John W. Morrow, being qualified to acquire lands from the United States under the homestead and pre-

*NOTE.—As to the conclusiveness and finality of the decisions of the land department of the United States concerning matters within its jurisdiction, see note in 89 Am. St. Rep. 152 collecting many authorities.

REPORTER.

emption laws, settled upon the lands described in the complaint with intent to acquire title thereto as a timber culture claim under the laws of the United States, and on March 15, 1889, duly made and filed his timber culture application for said lands in the United States land office at Lakeview, Oregon, and paid all fees and costs of such entry, and received his receipt and certificate of entry from the register and receiver; and that such entry was made in good faith and for the sole purpose of acquiring said land as a timber culture claim; and that thenceforth he continuously resided upon and improved said land and offered to make final proof thereon up to the time of his death on the —— day of ——, 190—; that since the death of John W. Morrow, the defendant has been appointed the· administrator of his estate and entered into possession of said land and ever since has been, and now is, such administrator, and in possession of said property as administrator, and not otherwise; "that from and since the date of making said entry defendant has been in the actual and exclusive possession and occupation of said land," and that said tract of land was on March 12, 1860, and on March 12, 1888, dry land suitable for agricultural purposes, and never was swamp nor overflowed land nor mineral land, nor sold or disposed of by the United States in any way for any purpose whatever, but was public land belonging to the United States, subject to said timber culture entry of John W. Morrow as aforesaid; and that the defendant was at the commencement of this action and still is the owner of a legal estate in said tract of land and in the actual possession and entitled to the possession of the same. A reply was filed to this answer, denying all of its material allegations, except possession on the part of the defendant and the making of the timber culture entry by John W. Morrow, and alleging the cancellation of such timber culture entry by the Secretary of the Interior on March 16, 1903.

At the trial the plaintiff offered in evidence a certified copy of the patent from the United States to the State of Oregon for the lands in question and other lands amounting to about 3,000 acres, dated October 6, 1903, properly executed and duly

recorded in the United States General Land Office and also in the office of the County Clerk of Lake County, Oregon, which patent recites that "the several tracts or parcels of land hereinafter described have been selected as 'Swamp and Overflowed Lands' inuring to the said state under the act aforesaid." "And for which the Governor of the State of Oregon has requested a patent issued to the said State as required in the aforesaid acts." The defendant objected to the introduction of this patent "for the reason that it was incompetent and immaterial and that it does not show on its face that it was ever received by the State of Oregon or by any officer of the State of Oregon authorized to receive the same; that it is not recorded in any of the state land records, and does not purport to be and there is nothing to show that it has ever been received or accepted in any manner by the State of Oregon"; and also offered to show that the patent had never been received or accepted by the State of Oregon, which objection and offer were overruled. The plaintiff then offered in evidence a certified copy of the patent from the State of Oregon to the plaintiff covering the lands in controversy, dated June 23, 1899, which patent included about 5,000 acres of other land. Defendant objected to the introduction of this for two reasons: (1) It conveyed more than 320 acres of land to one person, whereas the state law limits the sale of state lands to any one person to 320 acres; and (2) at the time of the execution of the deed the State of Oregon had no title. The objection was overruled. Plaintiff then rested, and defendant moved the court to instruct the jury to return a verdict for the defendant on the ground that (1) there was no evidence showing defendant in possession of the land at the commencement of the suit; (2) there was no evidence of title having been proven. This motion was overruled and a motion for a nonsuit was also overruled.

The defendant then offered in evidence certified copies of certain powers of attorney and deeds and applications to purchase swamp lands, and records of the proceedings of the State Land Board covering the lands in question and other lands prior to the issuance of the patent by the State to the plaintiff,

all which were excluded. Defendant then offered testimony tending to show that the Governor of the State had on July 27, 1903, and at subsequent dates, refused to accept or receive any patent or approve the list of swamp lands which included the lands in controversy, and had protested against the issuance of any patent to the State of Oregon for such lands, which was also excluded. Defendant also offered evidence to prove that the land in controversy was in 1884 dry land and neither swamp nor overflowed within the act of Congress of 1860 granting such lands to the State of Oregon, which was also excluded. After the defendant rested, the plaintiff moved the court to instruct the jury to bring in a verdict in favor of the plaintiff, which motion was allowed, and a verdict found in favor of the plaintiff, and judgment entered, from which this appeal was taken.    AFFIRMED.

For appellant there was a brief with oral arguments by *Mr. Edward Byers Watson, Mr. John Hicklin Hall* and *Mr. Andrew Murray Crawford.*

For respondent there was a brief over the names of *Charles Amos Cogswell* and *Coovert & Stapleton,* with oral arguments by *Mr. Cogswell* and *Mr. E. E. Coovert.*

MR. JUSTICE HAILEY delivered the opinion of the court.

1. The objection to the introduction in evidence of the certified copy of the patent of the United States to the State was not well taken. The law is well settled that title by patent from the United States is title by record, and the delivery of the patent to the patentee is unnecessary to pass title as in the conveyance by a private person: *United States* v. *Schurz,* 102 U. S. 378 (26 L. Ed. 167) ; *Eltzroth* v. *Ryan,* 89 Cal. 135-139 (26 Pac. 647) ; *Le Roy* v. *Clayton,* 2 Sawy. 493 (Fed. Cas. No. 8,268) ; 26 Am. & Eng. Encyc. Law (2 ed.), 421.

2. The objection to the patent from the State to the plaintiff is based upon Section 4, p. 42, of the Session Laws of 1878,* authorizing the sale of not exceeding 320 acres to any one person. This, however, is untenable. The state land board under our law is the land department of the State: *Corpe* v. *Brooks,*

*Laws 1878, pp. 41, 42, § 4.

8 Or. 223; *Robertson* v. *State Land Board,* 42 Or. 183, 187 (70 Pac. 614). And, as stated by Mr. Justice FIELD in *Smelting Co.* v. *Kemp,* 104 U. S. 646 (26 L. Ed. 875): "A patent, in a court of law, is conclusive as to matters properly determinable by the land department when its action is within the scope of its authority; that is, when it has jurisdiction under the law to convey the land. In that court the patent is unassailable for mere errors of judgment. Indeed, the doctrine as to the regularity and validity of its acts, where it has jurisdiction, goes so far that if in any circumstances under existing law a patent would be held valid, it will be presumed that such circumstances exist": *Eastern Oregon Land Co.* v. *Andrews,* 45 Or. 203, 210 (77 Pac. 117).

3. This court has held in *Gliem* v. *Board of Commissioners,* 16 Or. 479 (19 Pac. 16), that a person who has purchased from the state land board the maximum quantity of land allowed to be purchased by one person is not thereby disqualified from taking an assignment of a certificate of purchase from the board to another applicant under the act and receiving a deed from the board for such lands in his own name. It being possible under the law for the plaintiff to have purchased certificates from other persons and have the lands conveyed to it, the court could not say from the mere number of acres conveyed that the patent was void, and rightly overruled the objection to its introduction upon that ground.

4. The question raised by the objection as to the title of the State at the time of the issuance of its patent to the plaintiff is disposed of adversely to the defendant herein in the case of *Warner Stock Co.* v. *Calderwood,* 36 Or. 228-233 (59 Pac. 115), which holds that the plaintiff's title, upon the issuance of the patent from the United States, relates back to the date of the grant to the State, March 12, 1860, when the swamp land act was extended to Oregon.

5. The evidence offered to prove the land was not swamp land, and the records and proceedings of the state land board, were properly rejected, for such evidence was an attempt to impeach the patent from the Government to the State and the

patent from the State to plaintiff, and was clearly not admissible in a law action: *Sanford* v. *Sanford*, 19 Or. 4 (13 Pac. 602); *Warner Stock Co.* v. *Calderwood*, 36 Or. 228-233 (59 Pac. 115); *Small* v. *Lutz*, 41 Or. 570-578 (69 Pac. 825); *Smelting Co.* v. *Kemp*, 104 U. S. 645 (26 L. Ed. 875). Where the authorized officers of the government have issued a patent in due form of law which on its face is sufficient to convey the title to the land described in it, it will be presumed that all the prerequisites to the issuance of a valid patent have been complied with, and the title conveyed is impregnable to collateral attack: 26 Am. & Eng. Encyc. Law (2 ed.), 390. The reason of this rule is fully and ably stated in *Smelting Co.* v. *Kemp*, 104 U. S. 645 (26 L. Ed. 875), as follows: "The patent of the United States is the conveyance by which the nation passes its title to portions of the public domain. For the transfer of that title the law has made numerous provisions, designating the persons who may acquire it and the terms of its acquisition. That the provisions may be properly carried out, a land department, as part of the administrative and executive branch of the government, has been created to supervise all the various proceedings taken to obtain the title from their commencement to their close. In the course of their duty the officers of that department are constantly called upon to hear testimony as to matters presented for their consideration, and to pass upon its competency, credibility and weight. In that respect they exercise a judicial function, and therefore it has been held in various instances by this court that their judgment as to matters of fact, properly determinable by them, is conclusive when brought to notice in a collateral proceeding. Their judgment in such cases is, like that of other special tribunals upon matters within their exclusive jurisdiction, unassailable except by a direct proceeding for its correction or annulment. The execution and record of the patent are the final acts of the officers of the government for the transfer of its title, and as they can be lawfully performed only after certain steps have been taken, that instrument, duly signed, countersigned and sealed, not merely operates to pass the title, but is in the nature of an official declaration

by that branch of the government to which the alienation of the public lands under the law is intrusted, that all the requirements preliminary to its issue have been complied with. The presumptions thus attending it are not open to rebuttal in an action at law. It is this unassailable character which gives to it its chief—indeed, its only—value as a means of quieting its possessor in the enjoyment of the lands it embraces. If intruders upon them could compel him, in every suit for possession, to establish the validity of the action of the land department and the correctness of its ruling upon matters submitted to it, the patent, instead of being a means of peace and security, would subject his rights to constant and ruinous litigation."

6. The only remaining question is upon the exclusion of the testimony offered regarding the protest of the Governor against the issuance of the patent by the United States, and his refusal to accept such patent. The defendant claims no legal title to the land in controversy, and his answer fails to show any equitable title therein. He alleges legal title in the United States, and for himself sets up the claim of a timber culture entry made by his intestate, John W. Morrow, in 1889, but in no way connects himself with such entry. The death of a timber culture entryman who has not made final proof ends his estate in the land claimed, and his heirs, if any, take the land as grantees of the government, and not by inheritance. Therefore, the defendant could have no right in the land as administrator, and he has not alleged any fact that would give him any right as heir, and hence as grantee of the government under the timber culture act: *Kelsay* v. *Eaton,* 45 Or. 70 (76 Pac. 770, 106 Am. St. Rep. 662) ; *Cooper* v. *Wilder,* 111 Cal. 199 (43 Pac. 591, 52 Am. St. Rep. 163). He is therefore a stranger to the title, and cannot question the rights of the plaintiff under either of the patents: *Stewart* v. *Altstock,* 22 Or. 182-190 (29 Pac. 553) ; *Schieffery* v. *Tapia,* 68 Cal. 184-186 (8 Pac. 878).

Finding no error in the judgment of the lower court, it is affirmed. AFFIRMED.