## UNITED STATES v. CASTER et al.*

(Circuit Court of Appeals, Eighth Circuit. March 17, 1921.)

No. 5696.

1. **Indians ☞14—Public lands ☞114(1)—Patent to Indian allotment passes title on recording without delivery.**

Under Rev. St. § 458 (Comp. St. § 705), prescribing the procedure for issuance of a patent, a patent to public lands passes title to the patentee on its being recorded as therein required, before its delivery to the patentee, and this rule applies to lands allotted to Indians, as well as to other public land.

2. **Equity ☞363—Pleading ☞8(15)—General allegation of misrepresentation inducing patents to Indian allottees is a conclusion, not admitted by motion to dismiss.**

A general allegation that the commission appointed by the Secretary of the Interior to examine as to the competency of Indian allottees was misled by misrepresentations that the Indians were competent to control their own affairs is a mere allegation of a conclusion, not admitted by the motion to dismiss, and is insufficient to sustain the complaint as one to cancel the patents for fraud, since fraud must be stated with fullness and particularity.

Appeal from the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

Suit by the United States, in its own behalf and as guardian of certain Indians, against G. M. Caster and another. From a decree dismissing the complaint, the United States appeals. Affirmed.

E. W. Fiske, U. S. Atty., of Sioux Falls, S. D. (George Philip, Asst. U. S. Atty., of Rapid City, S. D., and John T. Grigsby, Asst. U. S. Atty., of Sioux Falls, S. D., on the brief), for the United States.

E. E. Wagner, of Sioux City, Iowa, and A. H. Orvis, of Yankton, S. D., for appellees.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Rehearing denied June 21, 1921.

Before SANBORN and CARLAND, Circuit Judges, and LEWIS, District Judge.

CARLAND, Circuit Judge. Appellant brought this action, in its own behalf and as guardian of certain Indians of the Yankton Band of the Sioux Tribe of Indians and their heirs, against appellees, for the purpose of obtaining a decree adjudging the appellant to be the owner of the allotted lands described in the complaint, subject to the rights of the Indian allottees mentioned therein, and for the cancellation of all conveyances of said lands made by said Indians to the appellees. On motion of appellees Caster and Hegnes, the complaint was dismissed generally.

The question raised by the appeal is whether or not the complaint states a cause of action. The complaint alleges that the lands in controversy were allotted to the several Indians mentioned therein under the Act of Congress of February 8, 1887 (24 Stat. 388); that pursuant to section 5 of said act (Comp. St. § 4201) the Secretary of the Interior caused trust patents to be issued to each allottee, which patents were—

"of the legal effect, and declare that the United States does and will hold the land thus allotted, for the period of 25 years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or, in case of his decease, of his heirs according to the laws of the state or territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his heirs as aforesaid, in fee, discharged of said trust and free of all charge or encumbrance whatsoever: Provided, that the President of the United States may in any case in his discretion extend the period."

That on April 20, 1916, and prior to the expiration of the period for which any of said allotted lands were held in trust, the President of the United States issued an executive order extending the trust period on the allotments described in the complaint for the further period of 10 years. The complaint then alleges as follows:

"For the purpose of assisting him in the exercise of the authority vested by said act of May 8, 1906, the Secretary of the Interior appointed a commission consisting of A. W. Leech, Superintendent of the Yankton Reservation, O. M. McPherson, special agent of the Indian Service, and James McLaughlin, inspector for the Interior Department, and directed such commission to make an investigation of the competency and capability of the Indian allottees residing on the Yankton Reservation to manage and control their property. The commission proceeded to make such an investigation, and on its completion submitted reports to the Secretary of the Interior representing that a number of such Indians, including those named in paragraph II, were competent to manage and control their own affairs and recommending that the Secretary of the Interior issue to them patents in fee covering their several allotments.

"Relying upon such representations and recommendations, the Secretary of the Interior directed that patents in fee be issued to the several Indian allottees named in paragraph II covering their respective allotments. Such patents in fee were thereupon prepared, signed by the President of the United States, countersigned by the Recorder of the United States General Land Office, sealed with the seal of said office, and recorded in said office in a book there regularly kept for the recording of such instruments.

"The Secretary of the Interior decided to make delivery of the patents in person, and notified the successful applicants for patents in fee, including the

allottees named in paragraph II, that he would be in Greenwood, S. D., on May 13, 1916, to make delivery. He arrived there on May 12, 1916, and thereupon learned that he had been grossly misled as to the competency of such allottees; that they were palpably incompetent to manage and control their respective properties and were not qualified to receive patents in fee; that, while such allottees had been represented to him as competent, some of them were wholly untutored, and each and all of them were without business experience, were incapable of protecting his or her property, or of appreciating its true value, and were easily imposed upon by the craft and design of their more astute white neighbors; and that certain of them, as hereinafter stated, before the execution of their respective fee patents in some cases and after such execution in others, but before the time for the delivery of the patents, had been unlawfully, secretly, and surreptitiously imposed upon by white men, and had entered into secret and unlawful agreements for the sale and disposition of their several allotments and had otherwise been duped and defrauded in relation thereto. The said patents having been executed under a misapprehension of the true facts and under a gross mistake, the Secretary of the Interior thereupon refused to deliver the patents, took them back to Washington, and ordered them to be marked 'Canceled.'

"The members of the commission responsible for the representations and recommendations heretofore mentioned had been likewise misled in making their investigations and examinations of the character, habits, industry, etc., of the Indian allottees named in paragraph II and made their findings of fact under a like misapprehension of the true facts and under a gross mistake. The plaintiff therefore avers that title to the said lands is still in the United States for the benefit of the respective allottees, but in any event the plaintiff is entitled to have said patents set aside, canceled and annulled by reason of the mistake of fact and the misrepresentations hereinbefore set out."

The complaint further alleges on information and belief that appellees Caster and Hegnes conspired together unlawfully to obtain the lands involved in this suit, and in furtherance of such conspiracy, and before the execution of the fee patents in some cases and after such execution in others, but before the time for the delivery of the patents, severally had entered into secret and unlawful contracts with certain of the Indian allottees, under which the latter agreed upon receipt of such patents to convey their respective allotments for grossly inadequate considerations to said appellees, and did fraudulently cause said several Indian allottees and their heirs to execute certain warranty deeds and quitclaim deeds, purporting to convey their respective allotments or portions thereof for grossly inadequate considerations. The complaint further alleges:

"Each and all of the Indian allottees were at the time of the execution of such deeds incapable of competently managing and controlling their property. Although fully aware of such incompetency, defendants G. M. Caster or Hegnes, or both, their respective agents or intermediaries, fraudulently and illegally represented to the several Indians that they were competent at law legally to execute such deeds, that the amount of money or other consideration offered in each case for the land involved represented the actual and fair market value thereof, and that said defendants, their respective agents or intermediaries, as the case may be, had lawful authority to make such offers of purchase. Such false representations were made with the intent on the part of the said defendants that the same should be believed and relied on, and the same were believed and relied on, by the several Indian allottees, who, as hereinbefore stated, executed the deeds specified in paragraph XV and received the sums of money offered, or portions thereof, or other considerations, which sums or the value of the other considerations were materially less than the actual or fair market value of the lands involved."

We take judicial notice of section 5 of the Act of February 8, 1887, which provides that if any conveyance shall be made of the lands set apart and allotted as therein provided, or any contract made touching the same, before the expiration of the period for which the lands are held in trust, such conveyance or contract shall be absolutely null and void, also the Act of Congress approved June 25, 1910 (36 Stat. 857 [Comp. St. § 10227]), which makes it unlawful for any person to induce any Indian to execute any contract, deed, mortgage, or other instrument, not authorized by law to be made, purporting to convey any land or any interest therein held by the United States in trust for such Indians or to offer any such contract, deed, mortgage, or other instrument for record in the office of any recorder of deeds, also the Act of Congress approved May 8, 1906 (34 Stat. 182), which authorizes the Secretary of the Interior whenever he shall be satisfied that any Indian allottee is competent and capable of managing his or her affairs, at any time to cause to be issued to such allottee a patent in fee simple, instead of awaiting the termination of the trust period.

[1] It will be seen from the foregoing statement of facts that the complaint is drawn primarily upon the theory that the lands in controversy are still the property of the United States subject to the rights of the Indian allottees therein. This theory is inconsistent with the pleaded facts. Ever since the case of U. S. v. Schurz, 102 U. S. 378, 26 L. Ed. 167, was decided it has been settled law that the delivery of a patent in fee of public land is not necessary to pass the title to the patentee. Counsel for appellant admits this to be true, but seeks to make a distinction between what are known as public lands and Indian lands. It is also admitted that patents in fee of both public and Indian lands are issued under and by authority of the provisions of Rev. Stat. § 458 (Comp. St. § 705), which reads as follows:

"All patents issuing from the General Land Office shall be issued in the name of the United States, and be signed by the President, and countersigned by the Recorder of the General Land Office; and shall be recorded in the office, in books to be kept for the purpose."

We cannot find that the officers of the United States having charge of the disposal of the public lands ever made any such distinction as is sought to be made in this case. In 1836, when the law just quoted mentioned "public lands," United States Attorney General Butler (3 Op. Attys. Gen. 167) decided that the words "public lands," as used in section 4 of the law under consideration (Comp. St. § 4198), must be regarded as a comprehensive generic phrase, designed to include all lands the title to which is so circumstanced as to require for its complete transmission a patent from the United States. Subsequently the statute was amended to include all patents. The Supreme Court in the Schurz Case said:

"The acts of Congress provide for the record of all patents for land in an office, and in books kept for that purpose. An officer, called the recorder, is appointed by law to make and to keep these records. He is required to record every patent before it is issued, and to countersign the instrument to be delivered to the grantee. This, then, is the final record of the transac-

tion, the legally prescribed act which completes what Sir William Blackstone calls 'title by record,' and when this is done, the grantee is invested with that title. * * * Whenever this takes place, the land has ceased to be the land of the government; or, to speak in technical language, the legal title has passed from the government, and the power of these officers to deal with it has also passed away. The fact that the evidence of this transfer of title remains in the possession of the land officers cannot restore the title to the United States or defeat that of the grantee, any more than the burning up of a man's title deeds destroys his title." 102 U. S. 402, 403, 26 L. Ed. 167.

See, also, McGarrahan v. New Idria Mining Co., 96 U. S. 316, 24 L. Ed. 630; Lonabaugh et al. v. U. S., 179 Fed. 476, 103 C. C. A. 56; Bicknell v? Comstock, 113 U. S. 149, 5 Sup. Ct. 399, 28 L. Ed. 962; Shaw v. Kellogg, 170 U. S. 340, 18 Sup. Ct. 632, 42 L. Ed. 1050; In re Emblen, 161 U. S. 52, 16 Sup. Ct. 487, 40 L. Ed. 613; Noble v. Union River Logging R. R. Co., 147 U. S. 165, 13 Sup. Ct. 271, 37 L. Ed. 123; Doolan v. Carr, 125 U. S. 618, 8 Sup. Ct. 1228, 31 L. Ed. 844; Steele v. Smelting Co., 106 U. S. 447, 1 Sup. Ct. 389, 27 L. Ed. 226; Smelting Co. v. Kemp, 104 U. S. 636, 26 L. Ed. 875.

The Department of the Interior and the Department of Justice have acted uniformly on the theory that the law as announced in the Schurz Case is applicable to patents in fee for allotted Indian lands. McLarty, 4 Land Dec. 498; Voght, 9 Land Dec. 122; Spirlock v. Northern Pac. R. R. Co., 22 Land Dec. 92; Barnes, 36 Land Dec. 202; Sullivan, 14 Land Dec. 389; Bowlegs v. Lane, 43 App. D. C. 494; Dickson v. Luck Land Co., 242 U. S. 371, 37 Sup. Ct. 167, 61 L. Ed. 371; Seaples v. Card (D. C.) 246 Fed. 507; King v. McAndrews, 111 Fed. 860, 50 C. C. A. 29. The cases of Northern Pac. R. R. Co. v. U. S., 227 U. S. 356, 33 Sup. Ct. 368, 57 L. Ed. 544, and La Roque v. U. S., 239 U. S. 62, 36 Sup Ct. 22, 60 L. Ed. 147, when the facts in those cases are considered, decide nothing contrary to the Schurz Case; nor does the case of Brown v. Hitchcock, 173 U. S. 475, 19 Sup. Ct. 485, 43 L. Ed. 772. See Warner Valley Stock Co. v. Morrow, 48 Or. 258, 86 Pac. 369. We have examined the other cases cited by counsel for appellant, and do not find that the rule of law established by the Schurz Case has been departed from. We are clearly of the opinion, therefore, that the complaint shows on its face that the title of the United States to the lands in controversy became divested by the execution and recording of the patents in fee, and that said title still remains divested, notwithstanding the attempt on the part of the Secretary of the Interior to reconsider the facts and recall and cancel the patents. If this is so, the appellant has no interest in the lands which would authorize it to maintain the action.

[2] The appellant further contends, however, by way of what seems to be an afterthought, that the complaint states a cause of action which would authorize the cancellation of the patents for fraud practiced upon the officers of the United States having charge of these lands. It is alleged in effect that the commission appointed by the Secretary of the Interior to examine as to the competency of the Indian allottees was misled, and that the Secretary of the Interior was also misled by the representations and recommendations that the Indians were competent to control their own affairs; but this is

a mere allegation of a conclusion of law, which the motion to dismiss does not admit. It has been stated by the Supreme Court of the United States that, when fraud and misrepresentations are relied upon as ground of interference by the court, they should be stated with such fullness and particularity as to show that they must necessarily have affected the action of the officers of the department. Mere general allegations of fraud and misrepresentations will not suffice. Quinby v. Conlan, 104 U. S. 420, 26 L. Ed. 800. There was no mistake of law. Mistake of fact is all that is claimed in the complaint; that is, the fact that the Indians to whom lands were allotted were not competent. Who made the misrepresentations and what they were nowhere appears. We do not believe that an extended discussion of the questions involved would subserve any useful purpose, or make more clear that which appears from a mere inspection of the complaint, which is that it states no cause of action.

Judgment below affirmed.