JOHN QUINN, Respondent, *v.* PHINEAS KENYON, Appellant.

Pre-emption Laws of the United States—Complaint Seeking Equitable Relief by One who Claims to have the Superior Right to Pre-emption.—A complaint which seeks to obtain equitable relief on the ground of the superior claims of the plaintiff to the right of pre-emption of the land in controversy, must show that plaintiff was qualified to acquire a pre-emption right, and that all the steps necessary under the Act of Congress to acquire one were taken.

Idem.—In such case, a complaint which fails to show that the plaintiff ever contemplated acquiring a pre-emption right, or that he would have done so, or that he in any way lost anything by the acts of the defendant, is fatally defective.

Sale of the Right of Pre-emption.—All transfers of the right of pre-emption are void by the statute; and the sale and delivery of possession of the land to another extinguishes all the incipient pre-emption rights which the first occupant may have acquired.

Idem.—The purchaser, if he has the proper qualifications, may acquire a new pre-emption right of his own, provided he can do it before a right should attach in any other person; but it would only date from the time he himself performed the necessary acts.

Jurisdiction of State Courts.—Have the Courts of a State the jurisdiction to review the action of the Federal Land Department in deciding upon contested claims to the right of pre-emption, when the subject-matter of the investigation, and upon which the preference depend, were transactions that occurred before the contest? *Quere?*

Appeal from the District Court of the Fifth District, County of San Joaquin.

The case is stated in the opinion.

*J. H. Budd,* for Appellant.

*John B. Hall,* for Respondent.

Sawyer, C. J., delivered the opinion of the Court:

The complaint does not state the facts so clearly or accurately as it might, and in order to a better appreciation of the case, we shall state some of the leading facts within the issues made by the pleadings, in our own way, as they are

derived from the findings, as well as from the complaint. In 1852, one Moore entered upon and took possession of a tract of unsurveyed land, built a house and barn on it, enclosed it with a fence, cultivating and occupying all within his enclosure till October, 1858, when he sold his improvements to one Owen, who also took and held possession of the enclosed tract till November, 1859, and then quitclaimed to plaintiff, who took and held possession to the same extent and in the same manner as Moore and Owen had done. In January, 1854, the defendant, Kenyon, also entered upon a tract of land to the northward of Moore's possession, enclosed it, erected a dwelling house upon it, cultivated and occupied it from that time till the institution of this suit, with the exception of a few days in 1861, when Quinn held possession under a judgment of the Court. Neither knew, at the time, how the lands would fall when surveyed by the Government. The township lines were established in 1854, and the townships were sectionized and the approved plats filed in 1855. It turned out, upon the survey, that the lands thus settled by Moore and defendant, Kenyon, were in the west half of Section 4, Moore being in the southerly part, and Kenyon in the northerly part, of said half-section, and that Moore's' buildings were on the south half of the southwest quarter, and Kenyon's on the south half of the northwest quarter, leaving the north half of the southwest quarter, or eighty acres—two of the smallest subdivisions under the Government surveys of forty acres each—lying between the buildings of these parties, upon which no buildings were erected by either. But the fence of these parties ran through the said north half of the southwest quarter, or eighty acres, cutting it into nearly, but not quite, equal parts, leaving about forty-three acres within the enclosure and actual occupation of Kenyon, and the balance within the enclosure and occupation of Moore—Kenyon thus enclosing and occupying a little more than half of the eighty acres. Thus, if we understand the matter, Kenyon had enclosed, and was in the actual occupation and cultivating the south half of the northwest quarter, and a little more than half of the eighty-acre tract intervening between him and Moore's buildings, and Moore

was in the occupation of the south half of the southwest quarter, and a little less than half of the said intervening eighty-acre tract—the north half of the southwest quarter— neither having possession of an entire forty-acre subdivision, but each having about half of each forty of the two forties making up the eighty-acre tract. Moore, at some period, it does not appear when, filed a declaratory statement, under the pre-emption laws of the United States, covering the whole of said southwest quarter. Kenyon, on the 29th of October, 1857, filed his declaratory statement, covering the south half of the northwest quarter, and also, the north half of the southwest quarter. Thus, both declaratory statements covered the latter tract, of which Kenyon, at the time, was in the actual occupation of a little more than half, and Moore of the balance. Subsequently, defendant, Kenyon, acquired the title of the United States, under the pre-emption laws, to the said north half of the southwest quarter. This action is brought to control the title for the benefit of the plaintiff, who, as the grantee of Moore, claims that he was entitled to the pre-emption right to said eighty-acre tract, and that defendant improperly obtained the patent. He asks that defendant may be adjudged to convey the land to plaintiff, and that plaintiff recover the possession of the land.

The plaintiff had judgment, and defendant appeals from the judgment and order denying a new trial.

The defendant demurred to the complaint, on the ground that it does not state facts sufficient to constitute a cause of action. The demurrer was overruled, and this ruling presents the first question relied on to reverse the judgment.

We are compelled to say that we think the point well taken. The findings cover many issues not presented by the pleadings. It is not even averred in general terms that Moore, Owen or plaintiff possessed the qualifications necessary to entitle them to acquire a pre-emption right. Nor are all the facts, prescribed by statute to qualify them, stated. (*Page v. Hobbs,* 27 Cal. 486.) It is only stated that the several parties were free white citizens, over twenty-one years of age, and that they had not had the benefit of the pre-emption laws before. But it will be seen, by reference to the Acts of

Congress, that this is not enough to enable them to acquire a pre-emption right. It is not alleged in the complaint when Moore filed his declaratory statement. He may have duly filed the statement, in all respects as to form, so as to entitle him to a pre-emption right upon the land, dating from the time of filing, provided no one else was ahead of him, but not in time to have his filing connect itself by relation to the first moment of his settlement, and thus cut out an intermediate pre-emption claimant. The time of the filing by defendant is alleged to be October 29, 1857. But if it be conceded that Moore's filing appears to be prior to that of the defendant, he sold his improvements to Owen. His pre-emption right did not and could not pass, because the twelfth section of the Pre-emption Act expressly provides that "all assignments and transfers of the right hereby secured, prior to the issuing of the patent, shall be null and void." Subsequent to the assignment, then, Moore was no longer in a position to follow up his right, and he could not vest it in Owen. The incipient pre-emption right of Moore, then, by the assignment to Owen, was extinguished. Owen, if he had the proper qualifications, upon succeeding to the possession, might acquire a new pre-emption right of his own, provided he could do it before a right should attach in any other person; but it would only date from the time that he himself performed the necessary acts. And the same rule would apply to his subsequent conveyance to Quinn.

It is not averred that Owen or Quinn ever took any steps to acquire a pre-emption right other than to take possession of the land. It does not appear in the complaint that they did anything in time to vest a right, that either of them ever filed any declaratory statement or made any application to pre-empt the land, or that they ever intended to do so. Moore's pre-emption right, if he ever had any, appears to have been extinguished, and nothing is shown by the complaint to have been acquired by Owen or Quinn. They could not play the part of the dog in the manger successfully, by not doing anything themselves, and prevent everybody else from doing something. On the other hand, there is shown a pre-emption right in defendant, Kenyon, recognized by the

Government, which attached as early as October 29, 1857, and was followed up till a title was acquired. The plaintiff alleges that, at the time of Moore's conveyance to Owen, and Owen's to Quinn, they did not know that defendant had any interest in, or claim to the land in question; that defendant, at that time, was present, and witnessed the first deed, and as a Justice of the Peace took and certified the acknowledgment of the second, without disclosing his own claim then, or at any time before payment of the purchase money. And these are the only equities stated in the complaint. With reference to these deeds, it may be said that the first does not purport at all to convey the eighty-acre tract in dispute. It merely purports to convey the buildings and improvements on a certain quarter-section, without purporting to convey the quarter-section. And, upon looking at the findings, it will be seen that Moore never was in the possession of quite half of the eighty acres in dispute, and his improvements did not extend beyond the part in possession, while defendant was always in possession of more than half. This deed does not, on its face, purport to cover any part of that portion in possession of defendant. The last deed is only a quitclaim, and may well have been supposed by defendant, who was familiar with the possession, to be intended to affect only that which Moore had before conveyed, and which had been in his possession. Both Moore and he entered long before the public surveys, and it turned out when they were made, as the findings show, that Moore was in the actual occupation of less than half the eighty-acre tract in dispute. It does not appear that defendant, at the time of the execution of those deeds, was yet aware where the lines would fall. And it seems strange, in view of the finding that the defendant was always in such actual occupancy, claiming the greater part enclosed, and cultivating it, that Owen and Quinn could have been ignorant of his claim. But however this may be, to go back to the complaint, the only part of the record necessary to consider, it is quite clear that it is insufficient. It fails to show that plaintiff was qualified to acquire a pre-emption right, or, if qualified, it fails to show that he took the necessary steps to acquire one, while it shows that

defendant took the necessary steps; and followed it up till he acquired the title from the Government of the United States, and the only reason shown why he should not retain the title is, that Moore sold his improvements to Owen, and Owen subsequently quitclaimed the whole quarter-section to Quinn, with the knowledge of Kenyon, and Kenyon did not disclose his pre-emption right before the said conveyances were made. It is not alleged that plaintiff ever contemplated acquiring a pre-emption right, or that he would have done so, or that he in any way lost anything in consequence of this want of disclosure. No fraud is alleged. We are now speaking of the case made by the complaint. As before remarked, the finding covers a great deal more ground; but the point is made that the complaint is insufficient, and we are clearly of the opinion that it is.

We are strongly inclined to the opinion that the facts disclosed by the findings are also insufficient to entitle the plaintiff to relief. It appears by the finding, that there was a contest between the parties before the proper United States land officers, who had jurisdiction to hear and determine the contest between these rival claimants for the pre-emption right, and the determination was finally in favor of defendant. Now, the very matters in contest in this case, are the matters which formed the basis of the claims of the respective parties in their contest before the Land Department. They must necessarily have been determined in that contest. They are not transactions that occurred in the contest by which the Land Department was fraudulently imposed on, and thereby induced to give the preference to the wrong party, as is the case in most, if not all the cases cited by plaintiff as authority, but the transactions were *before the contest*, and were the very subject-matter of the investigation in that contest, and upon which the preference depended. What jurisdiction have the Courts of California to review the action of the Land Department, upon the very facts which formed the basis of the claims of the respective parties? While we do not deem it necessary or proper to determine this matter finally upon the case as now presented, we

make these suggestions for the consideration of counsel, in case the claim should be further prosecuted.

Judgment and order reversed, and the cause remanded, with directions to the District Court to sustain the demurrer.