## J. J. SCHIEFFERY, APPELLANT, v. JUAN TAPIA, RESPONDENT.

NEW TRIAL — SERVICE OF NOTICE OF MOTION — OBJECTION TO HOW MUST BE TAKEN — WAIVER. — An objection that a notice of intention to move for a new trial was not served and filed in time is waived, if there is nothing in the statement to show that the attorney for the respondent objected to the service of the notice on admitting service of it, or of the statement, or on the settlement of the statement.

STATE LIEU LANDS — SELECTION AND LISTING OF — PRE-EMPTOR WHEN CANNOT ATTACK — INSTRUCTION. — The action was brought to recover the possession of certain land which was listed to the state as lieu land on the 13th of March, 1877, on an application and selection made by it on the 1st of October, 1873. On the 31st of July, 1879, the state conveyed the land by patent to the grantor of the plaintiff. The defendant claimed title under a pre-emption settlement made prior to the inception of any right on the part of the state, but gave no evidence that at such time he was a qualified pre-emptor, or had complied with the requirements of the pre-emption laws. The court instructed the jury that the listing to the state was a nullity, and the patent based upon it void, if at the time of listing the land was withdrawn from sale. *Held*, that the instruction was erroneous, because the defendant, not having connected himself with the title of the United States, could not attack the listing or patent to the state.

ID. — PATENT FROM STATE. — *Held, further*, that the defendant, not having shown any privity with the state, could not attack the patent from it.

ID. — FILING PLAT OF TOWNSHIP SURVEY — DECLARATORY STATEMENT OF PRE-EMPTOR — PRIORITY OF TITLE. — The evidence further showed that the plat of the survey of the township containing the land in controversy was filed in the proper district land-office on the 13th of June, 1872. The defendant filed his declaratory statement on the 20th of December, 1873. The act of Congress of March 3, 1853, required a pre-emption claimant to file his declaratory statement within three months after the receipt at the district land-office of the approved plat of the township embracing his settlement. *Held*, that the court would presume that such plat was received and filed on the same day, and that by reason of the selection by the state being prior to the filing of the declaratory statement by the defendant, its title derived by the listing in 1877 was superior in right.

EJECTMENT — TRIAL OF EQUITABLE ISSUES — APPEAL — BILL OF EXCEPTIONS — STATEMENT. — In an action of ejectment, equitable issues should be first tried, but an irregularity in that respect will not be considered on appeal, unless the facts appear in a bill of exceptions or statement.

APPEAL from a judgment of the Superior Court of San Luis Obispo County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*James F. Stuart, H. A. Powell, J. M. Wilcoxon, F. Adams,* and *S. A. Gregg,* for Appellant.

*E. & William Graves,* and *J. N. Turner,* for Respondent.

THORNTON, J.—The appeal from the judgment was not taken in time, and must therefore be dismissed.

It is said that the notice of intention to move for a new trial was not served and filed in time. The record shows that due service of the statement on motion for a new trial was admitted by the defendant's attorney, and that this statement was allowed and settled by the judge, "both parties being present by their attorneys." There is nothing in the statement to show that defendant's attorney made any objection to the service of the notice of intention on admitting service of it or of the statement, or on the settlement of the statement, and under such circumstances it must be held that any fault in giving notice was waived. (See *Hobbs* v. *Duff,* 43 Cal. 486; *Gray* v. *Nunan,* 63 Cal. 220; *Hibernia Soc.* v. *Moore,* 68 Cal. 156.)

The motion to dismiss the appeal from the order denying a motion for a new trial must therefore be denied.

The action is ejectment. The land in controversy was listed to the state of California as lieu on the 13th of March, 1877, on an application and selection appearing to have been made by it on October 1, 1873. On the 31st of July, 1879, the patent of the state was issued to Willard B. Brown, and on the 17th of October, 1881, Brown conveyed to plaintiff. The above constitutes plaintiff's chain of title. Defendant claims under a pre-emption settlement made in November, 1870, prior to the inception of any right on the part of the state.

The court instructed the jury as follows:—

"The patent put in evidence is dependent for its validity upon the legality and validity of the listing of the

land by the general government over to the state of California. If at the time it was so listed it had been pursuant to law reserved or withdrawn for the benefit of the Atlantic and Pacific Railroad Company, and such reservation or withdrawal was then in force, and the land had not been restored, the listing was an absolute nullity, and the patent from the state based upon it is void."

An attempt was made by this instruction to attack the validity of the listing to the state, which is equivalent to a patent in passing to it the fee-simple. (R. S. U. S., sec. 2449; *Frasher* v. *O'Connor*, 115 U. S. 116; 10 Stats. at Large, 346.) This the defendant could not do without connecting himself with the United States,—the original source of title. To do this, under the claim of pre-emption which he here makes, he must show that he was at the time of the selection made by the state in privity with the United States. (*Terry* v. *Megerle,* 24 Cal. 627; *People* v. *Stratton,* 25 Cal. 242; *Page* v. *Hobbs,* 27 Cal. 483; *Carder* v. *Baxter,* 28 Cal. 99; *Tyler* v. *Green,* 28 Cal. 408; *Megerle* v. *Ashe,* 33 Cal. 90.) To establish this privity he must show that he was a duly qualified pre-emptioner according to law, at the time indicated above, and had fully complied with the laws of the United States at the time existing requisite to acquire the right of pre-emption. (*Page* v. *Hobbs,* 27 Cal. 483; *Megerle* v. *Ashe,* 33 Cal. 74; *Quinn* v. *Kenyon,* 38 Cal. 500; *Burrell* v. *Haw,* 40 Cal. 377.) This he has not done. There is no evidence that he was not at the time of his settlement on the land in controversy the proprietor of 320 acres of land in some state or territory of the United States, or that he had not quit or abandoned his residence on his own land to reside on the public land. In absence of proof of these facts, the defendant cannot be regarded as of the class of persons entitled to pre-empt.

In this condition of the testimony, by giving this instruction the jury would have been directed to find on

an issue not in the case. As the defendant has not connected himself with the original and common source of title, he cannot show that the title is still in the United States; which would be the legal effect of proving that the land in controversy, when it was selected, was within a then existing reservation or withdrawal for the benefit of the Atlantic and Pacific Railroad Company. If the defendant was not in a position to attack the listing or patent to the state, neither was he in a position to attack the patent of the state unless he had shown that he was in some way in privity with the state, which he did not attempt to do.

Further, the evidence shows that the plat of the survey of the township containing the land in controversy was filed in the proper district land-office on the 13th of. June, 1872. Tapia filed his declaratory statement on the 20th of December, 1873. The statute of the United States required that the pre-emption right claimant should file his declaratory statement within three months from the date of the receipt at the district land-office of the approved plat of the township embracing his pre-emption settlement. (See Act of Congress, March 3, 1853, to provide for the survey of public lands in California, sec. 6; U. S. R. S., sec. 2266.) The plat of survey to the land-office comes approved from the surveyor-general's office or the general land-office at Washington, and we shall assume that it was filed as soon as received, and that the day of receipt and filing are the same. It appears, then, that the defendant did not file his declaratory statement until more than eighteen months after the date of receipt of the plat of survey, and more than fifteen months after he was required by law to make such filing.

If the state made its selection of the land in controversy on the first day of October, 1873, as would seem to be indicated by the words "located by state of California, October 1, 1873," in the certificate of William R.

Wheaton, register, found in the record, then the filing of Tapia came too late to affect the claim of the state. (*Page* v. *Hobbs*, 27 Cal. 483; *Megerle* v. *Ashe*, 33 Cal. 82, 83; *Poppe* v. *Athearn*, 42 Cal. 606.) The claim of the state was, then, prior in point of time, and by reason of such priority its title derived by the listing in 1877 would be superior in right. The same would be the case as to the title of plaintiff here deriving title by patent from the state.

It follows from the foregoing that the order denying the new trial herein must be reversed.

A point is made by plaintiff as to the mode in which this case was tried. Counsel say that there were legal and equitable issues in the case; that these issues were submitted to a jury, who rendered a general verdict for defendant, on which judgment was entered. It is urged that the mode in which the trial was had was irregular in this: that the equitable issues should have been first tried, and that for this irregularity there should be a reversal. We do not think that this point can be urged in this court on the record as it now stands, as the facts on which the point is based do not appear in a bill of exceptions or statement. But as the cause goes back for a new trial, we think it best to say that on such new trial the equitable issues, if not withdrawn, should be first tried, as directed in *Martin* v. *Zellerbach*, 38 Cal. 300.

Order reversed, and cause remanded for a new trial.

MYRICK, J., and MORRISON, C. J., concurred.