ALFREDO CAMPOS, Plaintiff and Appellee, *v.* GREAT AMERICAN INSURANCE Co., Defendant and Appellant.

No. 4019.   Argued June 14, 1928.—Decided December 14, 1928.

*J. Tous Soto* and *R. V. Pérez Marchand* for the appellant.   *F. Parra Capó* and *Leopoldo Tormes* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

This is one of the cases referred to in *Farinacci* v. *Niagara Fire Insurance Company, ante,* page 73.

After a judgment in favor of plaintiff in an action upon a fire insurance policy defendant filed a motion for a new trial. The motion was based upon the grounds mentioned in the fifth and sixth paragraphs of section 221 of the Code of Civil Procedure. These grounds were set forth in the form of reasons for the application and were accompanied by an announcement of the documents upon which defendant intended to rely, as shown by the following extract:

"(a) Because the evidence adduced by the plaintiff in this case is insufficient to justify the judgment entered herein.

"(b) Because while the trial was going on the lower court committed an error of law, to which this petitioner excepted.

"We base our allegation that the evidence is insufficient to justify the judgment on the ground that the court accepts as a purely fortuitous event the fire that destroyed plaintiff's establishment, when all the evidence shows that the fire originated with the combustion of explosives and inflammable liquids, the presence of which in that place could not be justified by plaintiff.

"Because the judgment finds in the statement of the District Chief of Police a satisfactory explanation of the question as to gasoline and other inflammable materials in the plaintiff's shop, when in point of fact this was the witness who most clearly showed that

the presence of combustibles in that place and under those circumstances was inexplicable.

"Because the judgment proceeds upon the theory that the presence of gasoline found in the establishment of the plaintiff immediately after the fire was justified by the fact that in a contiguous establishment belonging to a certain Ubides gasoline was kept for the use of his automobile, when the evidence showed that Ubides never made such a statement and there is the additional circumstance that, as appears from the record, the attorneys for the parties agreed and stipulated, at the time the defendant wished to summon the said Ubides as its own witness, that the said merchant did not have to appear inasmuch as the plaintiff admitted that if Ubides should return to the stand he would say that he, Ubides, did not inventory gasoline when he filed his claim with other insurance companies in connection with this same fire.

"As to the second ground of the motion, our contention that an error of law was committed, to which this petitioner duly excepted, is based on the fact that the court omits all reference to the special defense of incendiarism or lack of good faith set up by defendant and in its judgment accepts as proven that the fire occurred under circumstances which leave no ground for suspicion.

"Because the judgment accepts as proven that plaintiff complied with the terms and requirements of the insurance contract, and especially that he prepared and forwarded to defendant the required Statement of Loss and Proof of Claim, when the evidence is all to the contrary; and shows that if plaintiff signally failed in anything it was precisely in this respect, hence his attempt at the last minute in open court to justify the non-performance of that part of his contract.

"We will support the foregoing contentions with a statement of the case, the minutes of the court, and the judgment roll."

At the hearing of the motion for a new trial defendant presented a stenographic record which had been prepared and certified for use on appeal from the judgment, and the following incident occurred:

"Plaintiff: I request that the motion for a new trial be dismissed, and ask leave to renew the objection already made.

"Judge: The court thinks that the first point to be discussed is whether or not for the purposes of a motion for new trial the amendments to the Code of Civil Procedure relative to appeals (that is, if the transcript of the evidence may be used interchangeably

with statement of the case prepared by the party) are applicable to sections 216 and following regarding new trials; that is, whether a party may use, in a motion for a new trial, either the transcript of the evidence or a statement of the case, as provided by said sections. That is a question to be presented by the party offering such transcript of the evidence, Attorney Pérez Marchand; the court is of the opinion that he must show that the transcript of the evidence may be used in a proceeding for a new trial.

"The parties argue the question.

"Judge: The court overrules the objection on the ground that in accordance with section 22 of the Code of Civil Procedure when a motion for new trial is based on any of the causes mentioned in the fourth, fifth or sixth subdivision of section 22 it must be made on the record, judgment roll, minutes of the court, etc., and according to section 2 of Act No. 27 of 1917, after the judge has certified that the said transcript is true and correct, and has approved the same, it shall constitute and form a part of the judgment roll as if it were the bill of exceptions or statement of the case. The court is of the opinion that, in accordance with the foregoing, a motion for new trial may be based on the judgment roll, and the transcript of the evidence approved and certified by Judge Díaz Cintrón, who presided at the trial, forms part of the judgment roll; the court is of opinion that the motion for new trial may be considered.

"Plaintiff: We take an exception."

The order appealed from reads thus:

"Considering sections 222, 223 and 224 of the Code of Civil Procedure; the decisions in Quiñones v. Ana María Sugar Company, 23 P.R.R. 325; Silva v. Salamanca, 14 P.R.R. 529; Taylor v. Bell, 128 Cal. 306; Santiago v. Santiago, 28 P.R.R. 903; Swift v. Occidental Min. & Petroleum Company, 141 Cal. 161; and the stenographic record or transcript of the evidence of the case, the court is of the opinion that the motion for new trial filed by the defendant herein should be and the same is hereby overruled."

The sixth and last assignment of error is that—

"The court below erred in overruling the motion for a new trial in this case for the reasons stated in its order of July 24, 1926."

In *Silva* v. *Salamanca*, 14 P.R.R. 529, the statement of the case failed to specify the particulars in which the evidence was insufficient, and this court held that a mere re-statement

in general terms of what had been already set forth in the motion for new trial was not enough. *Quiñones* v. *Ana María Sugar Company, supra,* however, is authority for the proposition that the statement of the case may be amended in this regard.

What was decided in *Santiago* v. *Santiago, supra,* in so far as pertinent to any question herein was that—

"A judgment is not necessarily erroneous because in sustaining the complaint on the evidence no reference was made in the judgment, nor in the opinion, to the new matter set up in the answer, for the judgment for the plaintiff tacitly held that the defendants did not prove the new matter set up in the answer."

The appeal in the case last mentioned had been taken directly from the judgment. How far the doctrine of that case is applicable on an appeal from an order overruling a motion for a new trial need not now be determined. In so far as we are concerned therewith in the instant case, if applicable at all, the conclusion would be that the judgment rendered by the trial judge, regardless of the findings on which it was based, disposed of the issue as to the alleged incendiary origin of the fire. It would not follow, of course, that the evidence in this regard is sufficient to sustain such judgment.

Obviously the court below, upon overruling the motion for a new trial, examined the stenographic record only as far as necessary in order to ascertain the fact that it contained no specification of the particulars in which the evidence was claimed to be insufficient to sustain the judgment. As already shown, the court had previously overruled plaintiff's objection to the use of the stenographic record as a statement of the case. But the plaintiff did not challenge the record so tendered, for want of any specification as to the insufficiency of the evidence. If any such objection had been made and sustained by the court below, then defendant would have had an opportunity and the right to amend. (*Quiñones* v. *Ana*

*María Sugar Co., supra.*) Plaintiff, for whose benefit the statutory requirement as to such specification is primarily intended, waived his right to demand compliance with that requirement by his failure to make timely objection. (*The Hibernia Savings & Loan Society* v. *Moore,* 68 Cal. 156.) For the purposes of this opinion it may be conceded that the court of its own motion may call attention at any time to defects in the statement of the case, or, in certain circumstances, over-rule a motion for a new trial without consideration of a defective statement. But, in the instant case, after a full discussion and disposition of all objections interposed by plaintiff, the motion for a new trial should not have been denied because of mere technical defects, without any consideration whatsoever of the merits and without previous notice of any technical objection, or opportunity for amendment.

Ordinarily perhaps, in such circumstances, we would prefer to remand the case in order to permit the trial judge to decide in the first instance the more fundamental questions involved. But here the case was tried and the judgment rendered by one district judge, and the motion for a new trial was disposed of by another. The district court as now constituted would be in no better position than is this tribunal to pass upon the sufficiency of the evidence to sustain the judgment. We shall consider the evidence, however, only in so far as necessary to determine the principal question raised by the motion, and without anticipation of the final result that may be reached after a new trial. But, before entering upon this broader aspect of the case, one only of the minor propositions submitted by appellant, and this only because of its close connection with the main issue, need be discussed.

What the trial judge had in mind when he mentioned the testimony of Captain Martínez Chapel was the very frank disclosure made by this witness on cross-examination. The statement refers not only to the testimony of Martínez but also to that of other witnesses. The testimony of Martínez

and that of other witnesses, when so coupled, become one and inseparable and together form the basis of the finding in question.

It follows:

"4.—The existence of inflammable materials at the place of the accident was satisfactorily explained by the testimony of Martínez Chapel and other testimony, tending to show Ubides or Successors of Federico Font, merchants, (whose establishment was contiguous to that of Camp'os) had in their warehouse a large stock of kerosene, and that Ubides had gasoline there for his automobiles; it being further shown that the things belonging to Ubides stored in the shed behind the Campos place, as well as those in the Campos establishment itself, were left in complete disorder."

The mere fact, if it be a fact, that Ubides upon presenting his claim against other insurance companies did not include gasoline in his inventory is not conclusive upon the question as to whether or not there was gasoline in the courtyard on the night of the fire. What counsel for plaintiff during the course of the trial conceded in order to save time was, to quote from the stenographic record, that Ubides if called as a witness for defendant (italics ours) *"would testify* under oath that when he sent to the insurance companies, through Mr. Hastrup (the adjuster who intervened in this case) his inventory claiming the value of the property lost, he stated under oath that he had no gasoline *among the articles he carried in stock."*

The trial judge, of course, could not assume in the absence of Ubides that he would testify, if present, to anything more than was covered by the carefully worded admission of counsel for plaintiff. In any event, the trial judge was not obliged to accept as true the statement which it was conceded Ubides would make if called as a witness, but was at liberty to weigh such statement in connection with the facts established by other testimony and in the light of surrounding circumstances including the pecuniary interest involved at the time of making the inventory.

Whether or not all the testimony referred to by the trial judge was enough to explain the situation described by witnesses for defendant, and thus to offset what the trial judge apparently concedes would otherwise be a satisfactory showing as to incendiary origin, is quite another matter.

The Campos establishment was in a building fronting north on Market Square and east on León Street in Ponce. It faced the square with four front doors and in the rear opened on a courtyard. Ubides, doing business under the name of Successors of Font, fronted on León Street and in the rear opened on the same courtyard. There were in the courtyard three sheds or storehouses, one of which belonged to Ubides. Campos had a shedroom in the rear of his place of business extending into the courtyard. One or more of the back doors opened into this shedroom, which was used as an office.

The testimony for plaintiff tended to show that the fire originated in the courtyard and traveled with the breeze north and northwest toward the Campos place. This testimony, however, does not very definitely exclude the possibility that the fire might have started in the shedroom belonging to Campos. The hottest part of the fire was in the *patio* and most of the work of extinguishment was directed against that spot. Four connections were made with the water mains and three streams of water were used in the courtyard. Two high pressure pumps were employed. One of these was installed on the roof of the Ubides place of business, and another in front of the Campos establishment.

After the fire a stack of cans containing kerosene, and perhaps a few containing gasoline, were found in the courtyard. Other cans, more definitely identified as gasoline cans, were found in the front part of the Campos store. The cans last mentioned had been opened with some sharp instrument. One of them still contained a small quantity of gasoline, and another, gasoline and water.

The theory of plaintiff was that the cans found in the Campos store had been swept into the place by the water used to extinguish the fire in the courtyard. A rough estimate by Captain Martínez indicates that there were some two hundred cans in the stack which remained after the fire where the Ubides storehouse formerly stood. Martínez admits that there may have been gasoline in some of the cans because, as witness explains, he took no inventory of what was there. He is quite positive, however, that the bulk of the "stock" was kerosene. There were a number of cans scattered about the *patio,* some of which had exploded.

Witnesses for plaintiff refer in general terms to the gasoline or kerosene found in the courtyard. One of these witnesses says that he learned that some of the cans contained gasoline, by inquiring of Ubides and others. Later this witness at the suggestion of counsel for plaintiff adds that some of the cans were painted red. If there is any other testimony to the effect that Ubides kept gasoline on hand for use in his automobile, or for any other purpose, it has escaped our attention. Nor have we the benefit of any reference by counsel for appellee to any page of the record in this regard.

There was also some testimony for plaintiff tending to establish the fact that a stream of water from a high pressure pump, if played upon a can of gasoline or kerosene, will sweep it along until it comes in contact with some obstacle and will cause it to "fly" for a distance of a hundred meters or more. The captain in charge of the work on the night of the fire also explains that sometimes during a fire the water itself is "converted into gasoline," and catches fire, empty cans are refilled, and the unopened cans "roll" because the pressure is very great.

The testimony for defendant, on the other hand, indicates that before the alarm was given an explosion occurred in the Campos store, that one of the front windows was blown out and that a team of mules standing in front of the place re-

ceived cuts from flying fragments of glass; that when an attack was made upon the fire through the broken window a can of some inflammable material near the window began to blaze; that the fire was not readily extinguished, but spread when the water was turned upon it; that quantities of blazing gasoline or other combustible liquid floated out of the store and across the sidewalk upon the surface of the water and set fire to the boots of the firemen; that the street was "inundated" with gasoline in the presence of a large crowd of bystanders; that two of the gasoline cans picked up in the front part of the store were found between a show case and a counter; that in the early morning of the day after the fire a number of cheap blankets, or pieces of cheap blanket material and a kind of cloth used for protecting clothing from dust, impregnated with gasoline or kerosene were found in the front part of the store near the wall, below the shelving and beneath the merchandise which had fallen from the shelf. Upon one of the lower shelves other blankets, twisted lengthwise and saturated with gasoline or kerosene, were found lying end to end with other pieces of the same kind of cloth or "dusters" and stockings also saturated with gasoline or kerosene.

The theory that gasoline and gasoline cans might have been washed into the Campos establishment while the work of extinguishing the fire in the *patio* was in progress may suffice to explain the presence of inflammable material in the Campos store. It does not explain the violent explosion which is said to have occurred in the Campos place before the alarm of fire was given. It does not explain the presence of inflammable material systematically arranged behind the merchandise upon the shelves of the Campos store. There is nothing to show that the threshold of any one of the doors opening upon the courtyard was on a level or practically on a level with the courtyard. There is nothing whatever to show that any of these doors were open at any time before

they were consumed or partially consumed by fire. Other testimony for plaintiff tended to show that one of these doors, which had been only partially destroyed, was charred more deeply upon the outside than upon the inside. Thus, in one way and to the extent indicated, it proved too much. All things considered, the theory of plaintiff and of the trial judge falls far short of a satisfactory explanation of the conditions described as existing in the front of the Campos store at the time of the attack made by the firemen at that point within a few minutes, apparently, after the installation of a hose upon the roof of the Ubides building and of other apparatus elsewhere in the rear.

Upon a new trial the district judge, of course, will be free to weigh the testimony of the policeman as to the fact of an explosion and as to the time thereof, the statement of the detective as to what he found on the morning after the fire, and the story of events and conditions about the entrance and forepart of the establishment as told by the firemen and other witnesses for defendant. The trial judge, however, did not question the truth of any of these statements. On the contrary, and for the purposes of his statement of the case and finding, he apparently accepted them as true. Nor, as they stand in cold type upon the face of the stenographic record, do we find any satisfactory ground upon which to challenge them. Taking them at their face value, as in the circumstances we are constrained to do, they leave little or no room for doubt as to the incendiary origin of the fire. It follows, of course, that the evidence as a whole is inadequate to sustain the judgment, and that the motion for a new trial should have been granted.

Another and perhaps more serious question is raised by a motion to dismiss the present appeal. The theory of this motion is that one of the applications for an extension of time, in which to file in the court below a statement of the case in support of the motion for a new trial, had been filed

after the expiration of a previous extension. The belated application shows upon its face that counsel for defendant was under the impression that the previous extension had not expired but was about to expire. The request for additional time, like several others, was based upon the statement that counsel for plaintiff had notified the attorneys for defendant that certain proposed amendments to the pending statement of the case would be offered, for which reason the statement could not be completed until the final form thereof was determined. If any objection based upon the ground now suggested had been interposed in the court below, defendant at least would have had an opportunity to apply for relief under section 140 of the Code of Civil Procedure. The question now sought to be raised by appellee comes too late when presented for the first time on appeal.

In *Schieffery* v. *Tapia*, 68 Cal. 184, appellee insisted that the notice of intention itself had not been filed in time. The first three paragraphs of the opinion are as follows:

"The appeal from the judgment was not taken in time, and must therefore be dismissed.

"It is said that the notice of intention to move for a new trial was not served and filed in time. The record shows that due service of the statement on motion for a new trial was admitted by the defendant's attorney, and that this statement was allowed and settled by the judge, 'both parties being present by their attorneys.' There is nothing in the statement to show that defendant's attorney made any objection to the service of the notice of intention on admitting service of it or of the statement, or on the settlement of the statement, and under such circumstances it must be held that any fault in giving notice was waived. (See *Hobbs* v. *Duff*, 43 Cal. 486; *Gray* v. *Nunan*, 63 Cal. 220; *Hibernia Soc.* v. *Moore*, 68 Cal. 156.)

"The motion to dismiss the appeal from the order denying a motion for a new trial must therefore be denied."

In *Simpson* v. *Budd*, 91 Cal. 488, 491, the court said:

"It is undoubtedly true, as has often been decided by this court, that the right to move for a new trial is statutory, and unless the prescribed steps are taken within the time allowed, the right does not

exist as against a party who stands upon the statute and insists upon strict compliance with every provision of the law relating thereto and intended for his benefit; but it has never been held that such provisions may not be waived by the party otherwise entitled to claim their benefit. On the contrary, it has been assumed in many cases, if not directly decided, that the time for giving notice of motion for a new trial, as well as for every other step to be taken in relation thereto, may be waived or extended by consent. (*Hobbs* v. *Duff*, 43 Cal. 485; *Brichman* v. *Ross*, 67 Cal. 602; *Patrick* v. *Morse*, 64 Cal. 462; *Gray* v. *Nunan*, 63 Cal. 220; *Schieffery* v. *Tapia*, 68 Cal. 184; *Curtiss* v. *Superior Court*, 70 Cal. 390.)''

The motion to dismiss must be denied, the order appealed from reversed, and a new trial ordered.

Mr. Justice Texidor took no part in the decision of this case.