Alfredo Campos, demandante y apelado *v.* Great American Ins. Co., demandada y apelante.

No. 4019.—*Visto:* Junio 14, 1927. *Resuelto:* Diciembre 14, 1928.

*J. Tous Soto* y *R. V. Pérez Marchand,* abogados de la apelante; *F. Parra Capó* y *Leopoldo Tormes,* abogados del apelado.

El Juez Asociado Señor Hutchison, emitió la opinión del tribunal.

Este es uno de los casos a que se hace referencia en el de *Farinacci* v. *Niagara Fire Insurance Co.,* 38 D.P.R. 81.

Dictada que fué sentencia a favor del demandante en una acción sobre una póliza de seguro, la demandada radicó una moción de nuevo juicio. La moción se basaba en los fundamentos mencionados en los incisos 5 y 6 del artículo 221 del Código de Enjuiciamiento Civil. En estos fundamentos se exponían las razones que había para hacer la solicitud, y estaban acompañados de un aviso en que se hacían constar los documentos en que la demandada se proponía descansar, según demuestra el siguiente extracto:

"(a) Porque la prueba aducida por el demandante en este caso es insuficiente para justificar la sentencia recaída en el mismo.

"(b) Porque durante se tramitaba el juicio la Corte sentenciadora cometió un error de derecho, al cual opuso excepción la parte solicitante.

"Fundamos nuestra solicitud de que es insuficiente la prueba para justificar la sentencia en que la Corte da por probado como hecho puramente casual el incendio que destruyó el establecimiento del demandante, cuando toda la evidencia demuestra que el fuego fué originado por la combustión de explosivos y líquidos inflamables, cuya presencia en aquel sitio no pudo justificar el demandante.

"Porque la sentencia da por explicado satisfactoriamente lo de la gasolina y otros inflamables en la tienda del demandante por las declaraciones del capitán de la Policía Insular del Distrito, cuando en realidad de verdad fué este testigo quien mejor demostró que la presencia de aquellos combustibles en aquel sitio y en aquellas circunstancias no tenían justificada explicación.

"Porque la sentencia da por probado que la gasolina encontrada en el local del demandante inmediatamente después del incendio se justificaba por el hecho de que en un establecimiento contiguo de un señor Ubides se guardaba gasolina para el uso de su automóvil, cuando la prueba demuestra que el señor Ubides no declaró semejante cosa; y media la circunstancia de que según aparece del récord, los abogados de las partes convinieron y estipularon, en momentos en que la demandada quería citar al referido señor Ubides como su propio testigo, que dicho comerciante no tenía necesidad de comparecer porque el demandante aceptaba que si volviese a declarar como testigo declararía que él (Ubides) 'no inventarió gasolina cuando hizo su reclamación de otras compañías aseguradoras en relación con este mismo incendio.'

"Fundamos nuestra alegación, o segundo motivo de nuevo juicio, de que se cometió un error de derecho al que la parte solicitante tomó debida excepción, en que habiendo la demandada interpuesto la defensa especial de 'incendiarismo' o falta de buena fe, contra la reclamación del demandante, la Corte omitió toda relación a esta defensa y en su sentencia da por probado que el siniestro ocurrió en circunstancias que no dejan lugar a sospechas.

"Porque la sentencia da por probado que el demandante cumplió con los términos y exigencias de su contrato de seguro, y que especialmente hizo y remitió a la demandada el "Statement of Loss" y "Proof of Claims" que son de rigor en la reclamación de un seguro, cuando la prueba demuestra todo lo contrario, esto es, que si el demandante en algo faltó ostensiblemente para con la demandada, fué precisamente en este extremo, por lo que pretendió a última hora

en corte abierta justificar el incumplimiento de aquella parte de su contrato.

"Sostendremos los extremos precedentes con una exposición del caso, con las minutas de la Corte y con los autos y legajos del pleito."

Durante la vista de la moción de nuevo juicio la demandada presentó la transcripción taquigráfica del récord, que había sido preparada y certificada para ser usada en la apelación interpuesta contra la sentencia, y ocurrió el siguiente incidente:

"Demandante: Solicito se desestime la moción interesando se le conceda un nuevo juicio: en este momento solicito permiso para reproducir la moción de oposición presentada.

"Juez: El punto legal que cree la Corte que debe dilucidarse previamente por la parte, es si a los efectos de una moción de nuevo juicio, las enmiendas hechas al Código de Enjuiciamiento Civil que se refieren a apelaciones, o sea que se puede utilizar la transcripción de las notas taquigráficas indistintamente que una exposición del caso preparada por la parte son de aplicación a los artículos 216 y subsiguientes que se refieren a mociones de nuevo juicio, es decir, si una parte puede utilizar indistintamente en una moción de nuevo juicio la transcripción de la evidencia o la exposición del caso, según especifican dichos artículos: ésa es una cuestión que tiene que presentar la parte que la propone, que es el licenciado Pérez Marchand: la Corte cree que debe demostrar que puede hacerse por media de una transcripción de las notas taquigráficas este procedimiento de nuevo juicio.

"Las partes discuten la moción.

"Juez: La Corte declara sin lugar la moción previa y se funda para ello en que, de acuerdo con el artículo 222 del Código de Enjuiciamiento Civil, cuando la moción de nuevo juicio se funda en cualquiera de los apartados cuatro, cinco o seis del artículo 221, puede fundarse en los autos, legajo del pleito o en las minutas de la Corte, etc., y según la sección 2a. de la Ley 27 de 1917, después que el Juez ha certificado la fidelidad y corrección de las notas taquigráficas, después que se ha aprobado, ésta constituirá y formará parte del legajo de la sentencia como si fuera el pliego de excepciones o exposición del caso. La Corte entiende que de acuerdo con esto, una moción de nuevo juicio puede basarse en el legajo de la sentencia, y aquí constituye parte del legajo de la sentencia la transcripción de las notas taquigráficas ya aprobadas y certificadas por

el Juez, según aparece en este caso, por el Juez que entendió en el caso, Sr. Díaz Cintrón: La Corte cree que puede conocer de la moción de nuevo juicio.

"Demandante: Tomamos excepción."

La resolución apelada dice así:

"Vistos los artículos 222. 223 y 224 del Código de Enjuiciamiento Civil; la jurisprudencia en los casos de *Quiñones* v. *Ana María Sugar Company,* 23 D.P.R. 351; *Silva* v. *Salamanca,* 14 D.P.R. 543; *Taylor* v. *Bell,* 128 Cal. 306; *Santiago* v. *Santiago,* 28 D.P.R. 960; *Swift* v. *Occidental Min. & Petroleum Company,* 141 Cal. 161; y examinado el récord taquigráfico o transcripción de la evidencia en este caso, la Corte es de opinión que debe declarar, y por la presente declara, sin lugar, la moción de nuevo juicio presentada por la demandada en este caso.

El sexto y último señalamiento de error lee como sigue:

"La corte sentenciadora cometió error al declarar sin lugar la moción de nuevo juicio en este caso por los fundamentos de su resolución de 24 de julio de 1926."

En el caso de *Silva* v. *Salamanca,* 14 D.P.R. 543, en la exposición del caso se dejaban de especificar los particulares, según los cuales la evidencia era insuficiente, y esta corte resolvió que la mera relación de nuevo en términos generales de lo que ya se había consignado en la moción de nuevo juicio, no era suficiente. Sin embargo, el caso de *Quiñones* v. *Ana María Sugar Co., supra,* sostiene que la exposición del caso puede ser enmendada a este respecto.

Lo que se resolvió en el caso de *Santiago* v. *Santiago, supra,* en lo pertinente a cualquier cuestión envuelta en el presente, fué que:

"Una sentencia no es forzosamente errónea por el hecho de que al declarar con lugar la demanda por considerar probadas las alegaciones de la misma, deje de hacer referencia, y no la haga tampoco la opinión, a la materia nueva alegada en la contestación, pues al fallar a favor del demandante, tácitamente declara que los demandados no probaron los hechos alegados en la materia nueva de la contestación."

La apelación en el caso últimamente mencionado había sido interpuesta directamente contra la sentencia. Por el presente no es necesario determinar hasta qué punto la doctrina de ese caso es aplicable en la apelación entablada contra una resolución declarando sin lugar una moción de nuevo juicio. En lo que de tal doctrina nos concierne en el presente recurso, de ser acaso aplicable, la conclusión sería que la sentencia dictada por el juez inferior, independientemente de las conclusiones en que se basó, dispuso de la controversia relativa al supuesto origen incendiario del siniestro. De ahí no se desprendería, desde luego, que la prueba a este respecto es suficiente para sostener tal sentencia.

Evidentemente la corte inferior al declarar sin lugar la moción de nuevo juicio, examinó la transcripción taquigráfica solamente en lo que era necesario para cerciorarse del hecho de que no contenía especificación de los particulares según los cuales se alegaba que la prueba era insuficiente para sostener la sentencia. Según ya se ha demostrado, la corte anteriormente había declarado sin lugar la objeción del demandante sobre el uso de la transcripción taquigráfica en lugar de la exposición del caso. Pero el demandante no atacó el documento así ofrecido por no contener especificación alguna respecto a la insuficiencia de la prueba. Si se hubiese levantado tal objeción y ella hubiese sido sostenida por la corte, entonces la demandada hubiese tenido la oportunidad y el derecho de enmendarla. *Quiñones* v. *Ana Maria Sugar Company, supra.* El demandante, para cuyo beneficio se intentó principalmente el requisito estatutorio de tal especificación, renunció su derecho de exigir el cumplimiento de ese requisito al dejar de presentar una objeción oportunamente. *The Hibernia Savings and Loan Society* v. *Moore,* 68 Cal. 156. Para los fines de esta opinión puede admitirse que la corte inferior *motu proprio* puede llamar la atención en cualquier momento a los defectos que haya en la exposición del caso, o en ciertas circunstancias, de-

clarar con lugar una moción de nuevo juicio sin tomar en consideración una exposición defectuosa. Pero en el presente caso, después de discutirse ampliamente y de resolverse todas las objeciones interpuestas por el demandante, la moción de nuevo juicio no debió haberse declarado sin lugar por fundamentos técnicos, sin considerar en absoluto los méritos del caso y sin previo aviso de cualquier objeción técnica u oportunidad de enmendar.

Generalmente quizá, bajo tales circunstancias, preferiríamos devolver el caso con el fin de permitir que el juez sentenciador resuelva en primer lugar las cuestiones más fundamentales envueltas. Pero en este caso el juicio fué celebrado y la sentencia dictada por un juez de distrito, y la moción de nuevo juicio fué resuelta por otro juez. Según está constituida la corte de distrito en la actualidad, no estaría en mejor situación que esta corte para resolver sobre la suficiencia de la prueba para sostener la sentencia. Consideraremos la prueba, sin embargo, solamente en tanto en cuanto es necesaria para resolver la cuestión principal levantada por la moción y sin anticipar el resultado final a que pueda llegarse después de celebrado el nuevo juicio. Pero antes de entrar en este aspecto más amplio del caso, sólo es necesario discutir una de las proposiciones de menor importancia sometidas por el apelante y esto únicamente en vista de su íntima relación con la cuestión principal envuelta en el litigio.

Lo que el juez sentenciador tenía en mente al mencionar la declaración del capitán Martínez Chapel fué la muy franca revelación hecha por este testigo durante el examen de repreguntas. Esta manifestación se refiere no solamente a la declaración de Martínez sino también a la declaración de otros testigos. La declaración de Martínez y la de otros testigos así relacionada son una e inseparable y conjuntamente forman la base de la conclusión en cuestión.

Esta dice así:

"4. La existencia de materia inflamable en el lugar del incendio quedó explicada satisfactoriamente por la declaración del capitán de la policía Sr. Martínez Chapel y otras declaraciones que tienden a justificar que el señor Ubides o Sucesores de Federico Font, comerciantes establecidos contiguos al señor Campos, tenían en su almacén una gran cantidad de gas, y que el señor Ubides tenía allí gasolina que usaba para sus automóviles, quedando probado, además, que los artículos contenidos tanto en el ranchón del edificio del establecimiento del señor Campos que pertenecían al señor Ubides, como los que estaban en el propio establecimiento del señor Campos, quedaron en completo desorden."

El mero hecho, caso de ser un hecho, de que Ubides al presentar su reclamación a otras compañías de seguros no incluyera gasolina en su inventario, no es concluyente respecto a si había o no gasolina en el patio de la casa durante la noche del siniestro. Lo que el letrado del demandante durante el curso del juicio admitió con el fin de ahorrar tiempo, copiando de la transcripción taquigráfica, fué que si se llamaba a Ubides a declarar como testigo del demandado (itálicas nuestras), *"declararía* bajo juramento, que al enviar su inventario en reclamación de póliza a las compañías aseguradoras, por mediación del mismo ajustador señor Hastrup, que intervino en este caso, estableció bajo juramento que él *no llevaba entre los efectos de su surtido,* latas de gasolina."

El juez sentenciador, desde luego, no podía asumir, estando Ubides ausente, que éste declararía, al estar presente, otra cosa que lo abarcado por la admisión cuidadosamente redactada, hecha por el letrado del demandante. De todos modos, el juez sentenciador no estaba obligado a aceptar como cierta la aseveración que se admitía, Ubides haría al ser llamado como testigo, sino que estaba en libertad de apreciar tal manifestación en relación con los hechos establecidos por otra prueba y a la luz de las circunstancias que rodeaban el caso, incluyendo el interés pecuniario que estaba envuelto al tiempo de hacer el inventario.

Si toda la prueba a que hace referencia el juez senten-

ciador era o no suficiente para explicar la situación descrita por los testigos de la demandada y para así compensar lo que el juez sentenciador aparentemente admite sería por otra parte una demostración satisfactoria del origen incendiario del siniestro, es cuestión enteramente distinta.

Campos estaba establecido en un edificio situado frente a la Plaza del Mercado por el norte, y a la calle de León por el este, en la ciudad de Ponce. Tenía cuatro puertas por el frente de la plaza, y por la parte posterior daba a un patio. El establecimiento de Ubides, quien hacía negocios bajo la razón social de Sucesores de Font, estaba situado en la calle de León, y por la parte de atrás daba al mismo patio. En el patio había tres ranchones o almacenes, uno de los cuales pertenecía a Ubides. Campos tenía un ranchón en la parte posterior de su establecimiento, que se extendía hacia el patio. Una o más de las puertas traseras daban a este ranchón, el que se usaba como oficina.

La prueba del demandante tendió a demostrar que el incendio se originó en el patio y que se propagó con la brisa en dirección norte y noroeste hacia el establecimiento de Campos. Sin embargo, esta prueba no excluye muy definidamente la posibilidad de que el incendio pudiera haberse originado en el ranchón perteneciente a Campos. Donde el incendio castigaba más era en el patio, y la mayor parte del trabajo de extinción del incendio fué dirigida a ese sitio. Se hicieron cuatro conexiones con la cañería del acueducto y tres mangueras vertían el agua en el patio. Se usaron dos bombas de alta presión. Una de éstas fué instalada en la azotea del establecimiento de Ubides y la otra frente al establecimiento de Campos.

Después del incendio se halló en el patio un montón de latas conteniendo gas, y tal vez unas pocas conteniendo gasolina. Otras latas que fueron identificadas más definidamente como de gasolina fueron halladas en el frente del establecimiento de Campos. Las latas mencionadas últimamente,

habían sido abiertas con un instrumento punzante. Una de ellas aún contenía una pequeña cantidad de gasolina, y otra, gasolina y agua.

La teoría del demandante fué que las latas halladas en el establecimiento de Campos habían sido llevadas allí por el agua que se usó para extinguir el incendio en el patio. Un cálculo hecho a la ligera por el capitán Martínez indica que había unas 200 latas en el montón que quedó después del incendio donde anteriormente había estado el almacén de Ubides. El capitán Martínez admite que puede que hubiera gasolina en alguna de las latas porque, según explica él, no hizo un inventario de lo que allí había. Sin embargo, está seguro que la mayor parte de lo que allí había era gas. Había un número de latas diseminadas por el patio, algunas de las cuales habían explotado.

Los testigos del demandante se refieren en términos generales a la gasolina o gas que se halló en el patio. Uno de estos testigos dice que supo que algunas de las latas contenían gasolina por habérselo preguntado a Ubides y a otros. Posteriormente este testigo, a indicación del letrado del demandante, agrega que algunas de las latas estaban pintadas de rojo. De haber alguna otra prueba al efecto de que Ubides tuviera gasolina en existencia para usarla en su automóvil o para cualquier otro fin, ello ha escapado a nuestra atención. Tampoco tenemos el beneficio de alguna referencia del letrado de la apelada sobre la página del récord a este respecto.

También hubo alguna prueba del demandante tendente a establecer el hecho de que la corriente de agua de una bomba de alta presión lanzada sobre una lata de gasolina o gas la arrastrará hasta que la lata se pone en contacto con algún obstáculo, y que la hará "volar" una distancia de cien metros o más. El capitán que estaba a cargo del trabajo la noche del siniestro también explica que a veces durante un incendio el agua misma se convierte en gasolina y coge

fuego, las latas vacías se vuelven a llenar y las latas sin abrir ''ruedan'' debido a que la presión es muy grande.

Por otra parte, la prueba de la demandada indica que antes de darse la voz de alarma ocurrió una explosión en el establecimiento de Campos, que una de las vidrieras de enfrente fué destruida y que una pareja de mulas que estaba parada frente a aquel sitio recibió algunas heridas causadas por fragmentos de cristal al volar éstos por el aire; que cuando se atacó el incendio por la vidriera que se había roto, una lata de material inflamable que estaba cerca de la vidriera empezó a arder; que el incendio no fué extinguido prontamente, sino que se propagó al echarle agua; que cantidades de gasolina ardiendo o de otro líquido combustible salían flotando del establecimiento a través de la acera, sobre la superficie del agua, y les quemó las botas a los bomberos; que la calle estaba ''inundada'' de gasolina en presencia de una gran multitud de personas; que dos de las latas de gasolina recogidas en el frente del edificio fueron halladas entre una vidriera y un mostrador; que muy de mañana al siguiente día del siniestro se halló un número de frisas baratas, o pedazos de material barato de frisa y una especie de tela que se usa para proteger del polvos los trajes, impregnados de gasolina o gas, en el frente del establecimiento, cerca de la pared, debajo de los aparadores y de la mercancía que de ellos había caído. En uno de los aparadores de la parte de abajo se hallaron otras frisas, torcidas a lo largo y saturadas de gasolina o gas, puestas extremo con extremo, con otros pedazos de la misma tela o paños para el polvo y medias también saturados de gasolina o gas.

La teoría de que gasolina y latas de gasolina pudieron ser lanzadas dentro del establecimiento de Campos mientras se efectuaba el trabajo de extinción del incendio en el patio, puede ser suficiente para explicar la presencia de material inflamable en el establecimiento de Campos. Ello no explica la explosión violenta que se dice ocurrió en el establecimiento

de Campos antes de darse la alarma de fuego. Tampoco explica la presencia de material inflamable colocado sistemáticamente detrás de la mercancía que estaba en los aparadores de la tienda de Campos. Nada hay que demuestre que la parte de abajo de ninguna de las puertas que daban al patio estaba al nivel o prácticamente al nivel del patio. Tampoco hay nada que indique que ninguna de estas puertas estuviera abierta en momento alguno antes de ser consumidas o parcialmente destruidas por el incendio. Otra prueba del demandante tendió a demostrar que una de estas puertas, que solamente había sido destruida parcialmente, estaba más chamuscada por fuera que por dentro. De suerte que en una forma y hasta el límite indicado, probó demasiado. Tomando todo en consideración, la teoría del demandante y la de la corte sentenciadora dista mucho de ser una explicación satisfactoria de las condiciones que se describen como existentes hacia el frente del establecimiento de Campos en el momento en que los bomberos combatieron el incendio desde ese punto, aparentemente unos minutos después de haberse instalado una manguera en la azotea del establecimiento de Ubides, así como otros aparatos en la parte posterior del edificio.

En un nuevo juicio la corte de distrito, desde luego, está en libertad de apreciar la declaración del policía respecto al hecho de la explosión y de la hora en que ocurrió la misma, la del detective sobre lo que encontró a la mañana siguiente al siniestro y la relación de los hechos y condiciones existentes a la entrada y frente del establecimiento, según la hacen los bomberos y otros testigos del demandado. El juez sentenciador, sin embargo, no dudó de la veracidad de ninguna de estas declaraciones. Por el contrario, y para los fines de su relación del caso y conclusión, aparentemente las aceptó como ciertas. Tampoco, según aparecen de la faz del récord taquigráfico, hallamos motivo satisfactorio alguno

para atacarlas. Tomándolas según son, conforme estamos obligados a hacerlo bajo estas circunstancias, dejan muy poco o ningún lugar a dudas respecto al origen incendiario del siniestro. Se desprende, desde luego, que la prueba en conjunto no es adecuada para sostener la sentencia y que la moción de nuevo juicio debió haberse declarado con lugar.

Otra cuestión que quizá es más seria ha sido levantada por la moción en que se solicita la desestimación del presente recurso. La teoría de esta moción es que una de las solicitudes de prórroga para radicar en la corte inferior la exposición del caso en apoyo de la moción de nuevo juicio, había sido radicada después de expirada la prórroga anterior. La solicitud presentada tardíamente demuestra de su propia faz que el letrado de la demandada estaba bajo la impresión de que la prórroga anterior no había vencido, sino que estaba próxima a vencer. La súplica de que se concediera un tiempo adicional, al igual que otras mociones, estaba basada en la aseveración de que el letrado del demandante había notificado a los de la demandada que se propondrían ciertas enmiendas a la exposición del caso que estaba pendiente, razón por la cual la exposición no podía quedar terminada hasta que se determinara la forma definitiva en que debía redactarse la misma. Si se hubiese interpuesto en la corte inferior cualquier objeción basada en el fundamento que ahora se sugiere, la demandada por lo menos hubiese tenido la oportunidad de solicitar algún remedio de acuerdo con el artículo 140 del Código de Enjuiciamiento Civil. La cuestión que ahora trata de levantar el apelado es demasiado tardía al ser presentada por primera vez en apelación.

En el caso de *Schieffery* v. *Tapia,* 68 Cal. 184, el apelado insistía en que el mismo aviso de intención no había sido radicado oportunamente. Los tres primeros párrafos de la opinión leen así:

"La apelación de la sentencia no fué interpuesta oportunamente y por tanto debe ser desestimada.

"Se alega que el aviso de intención de presentar una moción de nuevo juicio no fué notificado ni radicado a tiempo. Los autos demuestran que la debida notificación de la exposición del caso en la moción de nuevo juicio fué admitida por el letrado del demandado y que esta exposición del caso fué admitida y aprobada por la corte, 'estando presentes ambas partes por medio de sus abogados.' En la exposición del caso no aparece nada que demuestre que el letrado de la demandada presentara objeción alguna respecto a la notificación del aviso de intención al darse por notificado o respecto de la exposición o en cuanto a la aprobación de la exposición del caso, y en tales circunstancias debe resolverse que se renunció a cualquier defecto en la notificación. Véanse los casos de Hobbs v. Duff, 43 Cal. 486; Gray v. Nunan, 63 Cal. 220; Hibernia Soc. v. Moore, 68 Cal. 156.

"Por tanto, debe denegarse la moción para desestimar la apelación de la orden declarando sin lugar la moción de nuevo juicio."

En el caso de *Simpson* v. *Budd,* 91 Cal. 488, 491, la corte dijo:

"Es indudablemente cierto, según esta corte ha decidido con frecuencia, que el derecho a solicitar un nuevo juicio es estatutorio y que a menos que se den los pasos prescritos, dentro del tiempo fijado, tal derecho no existe contra una parte que se ciñe al estatuto e insiste en que se cumpla estrictamente cada disposición de la ley relativa a la cuestión y que se ha intentado en su beneficio; pero nunca se ha resuelto que tales disposiciones no pueden ser renunciadas por la parte que de lo contrario tendría derecho a reclamar su beneficio. Por el contrario, se ha asumido en muchos casos, de no haberse resuelto directamente, que el término para notificar una moción de nuevo juicio, así como para dar cualquier otro paso en relación con la misma, puede ser renunciado o prorrogado mediante consentimiento. Hobbs v. Duff, 43 Cal. 485; Brichman v. Ross, 67 Cal. 602; Patrick v. Morse, 64 Cal. 462; Gray v. Nunan, 63 Cal. 220; Shieffery v. Tapia, 68 Cal. 184; Curtis v. Superior Court, 70 Cal. 390."

Se declara sin lugar la moción de desestimación, *se revoca* la resolución apelada y se ordena un nuevo juicio.

El Juez Asociado Sr. Texidor no intervino.